# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| DENISE A. BADGEROW, | * | Case No.: |
| on behalf of herself and a class of | * | |
| those similarly situated, | * | PLAINTIFFS' |
| Plaintiffs, | * | COMPLAINT |
| v. | * | (Trial by Jury Demanded) |
| | * | |
| REJ PROPERTIES, INC. D/B/A WALTERS, | * | |
| MEYER TROSCLAIR & ASSOCIATES, | * | |
| AND | * | |
| AMERIPRISE FINANCIAL SERVICES, | * | |
| INC. | * | |
| | * | |

**\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\* \* \*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\***

## PLAINTIFFS' COMPLAINT AND DEMAND FOR TRIAL BY JURY

Plaintiff, DENISE A. BADGEROW ("Badgerow"), on behalf of herself and a class of those similarly situated (collectively, the "Plaintiffs"), through undersigned counsel, brings this action against REJ PROPERTIES, INC., D/B/A WALTERS, MEYER TROSCLAIR & ASSOCIATES ("WMT"), and AMERIPRISE FINANCIAL SERVICES, INC. ("Ameriprise," and together with WMT, collectively referred to as "Defendants") and respectfully allege, as follows:

## INTRODUCTION

1.  This lawsuit seeks monetary relief and other damages for violations of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq.* ("Title VII"), Title I of the Civil Rights Act of 1991, 42 U.S.C. § 1981, *et seq.*, the Equal Pay Act of 1963, as amended, 29 U.S.C. §§ 206(d), and Louisiana laws prohibiting intentional discrimination and retaliation in employment, La. R.S. § 23:301 *et seq.* (the "LEDL") and state and federal laws prohibiting conspiracy, 42 U.S.C. §1985(3) and La. Civ. Code Art. 2324.  WMT intentionally discriminated against Badgerow and maintained

a continuing policy, pattern, and practice of sex and pay discrimination against female employees in the associate financial advisor ("AFA") role, with respect to pay, promotions, marketing materials, treatment, and other terms and conditions of employment.  WMT subjected Badgerow to a hostile work environment because of her gender, in violation of Title VII, by allowing Tommy Meyer ("Meyer"), a Director of WMT, to harass, embarrass and ultimately segregate Badgerow to an office all by herself.  After their unlawful actions were exposed, WMT retaliated against Badgerow by terminating her employment on the same day WMT was informed that Badgerow reported her treatment and concerns regarding WMT's violations of state and federal laws to Ameriprise, WMT's Franchisor.

## **THE PARTIES**

2.  Plaintiff Denise A. Badgerow ("Badgerow"), is an individual residing in the Parish of Lafourche, State of Louisiana.

3.  In addition to bringing this action on behalf of herself, Badgerow also brings this action on behalf of a class of similarly situated current and former female AFAs employed by WMT in the United States (the "Class" sometimes collectively with Badgerow referred to as "Plaintiffs"), in order to end WMT's discriminatory policies and practices and to make the Class whole.

4.  Defendant REJ Properties, Inc. ("WMT"), a Louisiana business corporation, doing business as Walters, Meyer, Trosclair & Associates is domiciled in the Parish of Lafourche, State of Louisiana, and may be served through its Registered Agents: Gregory A. Walters and Thomas J. Meyer, 132 Rue Collette, Suite A, Thibodaux, LA 70301.

5.  Defendant Ameriprise Financial Services, Inc. ("Ameriprise"), a Delaware corporation,

authorized to do and doing business in the State of Louisiana, with its principle place of business in Minneapolis, may be served through its Registered Agent: C T Corporation System, 3867 Plaza Tower Dr., Baton Rouge, LA 70816.

6.   At all relevant times, WMT continuously had at least 15 employees. WMT is an employer engaged in an industry affecting commerce within the meaning of Sections 701(b), (g), and (h) of Title VII, 42 U.S.C. §§ 2000e (b), (g), and (h).

## JURISDICTION AND VENUE

7.   Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 1331, 1337, and 1343. This action is authorized and instituted pursuant to Sections 706(f)(1), (3), and 706(g), as amended, 42 U.S.C. §§ 2000e-5(f)(1), (3), and (g), and Section 102 of the Civil Rights Act of 1991, 42 U.S.C. § 1981a.  Badgerow also invokes supplemental jurisdiction of this court over Plaintiffs' state law claims against WMT and Ameriprise pursuant to 28 U.S.C. §1367, as the common law claims form part of the same case or controversy arising from violations of Louisiana statutes.

8.   Venue is proper pursuant to 42 U.S.C. § 2000e-5 and 28 U.S.C. § 1391(b) as one or more of the alleged unlawful employment practices were committed within the jurisdiction of the United States District Court for the Eastern District of Louisiana.

9.   This action is brought to remedy discrimination on the basis of sex, hostile work environment and disparate treatment, in the terms, conditions, and privileges of employment for Plaintiffs and to remedy the retaliation against Badgerow for engaging in activity protected under Title VII.

10. Injunctive and declaratory relief, damages and other appropriate legal and equitable relief

are sought pursuant to 42 U.S.C. §2000e (f) and (g) and La. R.S. 23:301 *et seq.*

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

11. On or about March 6, 2015, Badgerow filed a Charge of Discrimination with the Equal Employment Opportunity Commission on behalf of herself and the Class.  Badgerow was issued a Dismissal and Notice of Rights on June 27, 2017.  All conditions precedent to the institution of this lawsuit have been fulfilled.

## FACTUAL ALLEGATIONS

12. Plaintiff, Badgerow, was hired to work for WMT directly upon graduating from Nicholls State University with a Bachelor of Arts in finance.  Badgerow was designated as a "Paraplanner" for a 90-day probationary period, and then promoted to an Associate Financial Advisor (AFA) on or about January 1, 2014, after passing all of her necessary financial regulatory exams to become an AFA, including the Series 7 and the Louisiana insurance exam.  Her work as an AFA was supervised directly by Gregory Walters ("Walters"), one of three Directors of WMT.

13. The agreement between Badgerow and WMT when she was initially hired is that after two (2) years of exemplary employment in the AFA role at WMT, WMT policy dictated that she would be promoted to a "Financial Advisor" (FA).

14. After the probationary period ended, Badgerow was promoted to AFA with a verbal agreement that would receive compensation of $30,000/year in base salary plus additional commission of 20%-40% of Gross Dealer Compensation, depending on her total sales balance for the year, which would reset on January 1 each year. Badgerow was never provided a written compensation agreement.

15. In October of 2014, Badgerow made a large commissioned sale that resulted in a Gross Dealer Compensation commission of approximately $50,000.  After this sale, she was informed by Kylie Kern (the WMT Office Manager), that WMT had determined to retroactively change Badgerow's compensation structure so that she would no longer be paid a guaranteed base salary of $30,000.   Instead, WMT's new unwritten policy required all first year AFAs to repay their base salary before earning commissions. Essentially, instead of earning a base salary plus commissions, as was originally agreed, Badgerow would retroactively be given a salary draw of $30,000, plus commission.   In essence, this new unwritten policy and unwritten compensation agreement cancelled out any benefit Badgerow received from her first large commission sale, in breach of WMT's verbal compensation agreement with Badgerow to pay her a guaranteed base salary.  From this point forward Badgerow was paid on the basis of a salary-draw as opposed to a base salary plus commission.  In addition, WMT held back two months of Base Salary in "Bank" in the event a commissioned sale was ever clawed back.

16. While the new retroactive pay policy seemed unfair and oddly timed, Badgerow wanted to seem like a team player and not rock the boat in what was proving to be a very hostile office environment.

17. On information and belief, the new WMT pay policy of AFAs receiving a salary-draw compensation structure was selectively adopted and enforced only against Badgerow and not the other similarly situated male AFAs in the office at the time or enforced with respect to any of the other male AFAs who have been hired subsequently.

18. After months into her new career, Walters offered Badgerow the opportunity to change roles from a client-facing AFA to an assistant to Walters. Assistants are equally

credentialed AFAs who work solely on another's book of business, and do not develop a portfolio of their own.  Badgerow adamantly refused Walters' suggestion.  Badgerow was determined to grow her own portfolio and book of business, not work as an assistant to Walter.

19. Upon information and belief, other than Badgerow, WMT has never employed a female client-facing AFA or FA.  All of these positions have been filled by men.  In fact, all of the competent female AFAs act as non-client facing assistants to male FAs at WMT.

20. About the time Badgerow refused to become an Assistant to Walters, the office harassment began.  Badgerow was told that Tommy Meyer, another Director at WMT did not like her.  When Badgerow asked Walters why Meyer did not like her, Walters stated, "I don't know – did you rebuff his sexual advances or turn him down for a date?"  After assuring Walters that nothing like that had ever happened, Walters responded to Badgerow, that it could be that he is just a misogynist.

21. Over the next year, Badgerow was subjected to constant harassment and ridicule by Meyer and his team, including Kylie Kern, Lynna Marcel, and other team members who worked under Meyer.

22. The harassment was so severe Badgerow sought medical attention for depression, stress and anxiety.

23. On or about January 20, 2016, after the end of her two-year period and a rock-star record of performance as an AFA, Walters informed Badgerow that she was promoted to the role of FA. On February 20, 2016, Meyer sent Badgerow and Kylie Kern an email stating: "I have made a decision that all associate financial advisors will maintain the title of Associate, as opposed to financial advisor, until they have completed five years of service with WMTA" a new unwritten

company policy was being adopted against long standing company policy, and Badgerow would be demoted and remain an AFA at WMT.

24. In 2015, Badgerow became aware that even though she was a top producing AFA, she was earning quarterly bonuses which were half the amount of her male counterparts.  When questioned about the bonus differential by Badgerow, Walters blamed the difference in bonus pay on Meyer with no further explanation, and hand wrote a payroll check to Badgerow to cover the $400 difference to "make it right".

25. In December 2015, after complaining constantly to Walters, Badgerow was moved to a separate office to avoid any further distress to Meyer, segregating her from the rest of WMT team and putting her in an office all by herself.

26. Around this time Badgerow spoke with Michael Barker of Ameriprise to get advice on the difficult office environment and strange dynamics.  Barker told Badgerow that if she did not like the situation she should quit, but "Do not tell me anything I would have to act upon." He hung up quickly.

27. On July 13, 2016, Badgerow spoke with Marc Cohen, a compliance officer of Ameriprise.  Badgerow expressed many of her concerns to Marc Cohen, including that she was being treated differently either because she was a female or because she was not a family member.  Marc Cohen told Badgerow on several occasions that he could not help her with regard to the discrimination complaints and that it was a legal issue for her, not a compliance issue to be addressed by Ameriprise.

28. On the morning of July 26, 2016, Marc Cohen placed calls to Walters and Meyer to discuss his conversation with Badgerow.  Mr. Cohen asked both men about the compliance issues and Meyer stated that he would fix the payroll issue immediately. During his

conversation with Walters, Mr. Cohen informed him that Badgerow "*said she was not sure if she was not treated fairly because she was not family or because she is a woman*."

29. Badgerow was called into the main office of WMT on July 26, 2016 to meet with Walters.  At this meeting Walters asked Badgerow to resign her position four or five times because "her statement to Marc Cohen dinged [Walters'] perfect compliance record".

30. After refusing to resign, Badgerow was terminated.  She signed a prepared letter that Walters provided to her stating that she was terminated but was not provided a copy.

31. Badgerow called the Ameriprise Retaliation hotline and filed a formal complaint on August 12, 2016, but was informed by the representative that Ameriprise had no ability to provide any assistance to employees that were retaliated against in connection with compliance, even though all franchises were subject to the Ameriprise Code of Conduct.

32. On August 17, 2016, Badgerow's counsel sent a letter to both WMT and Ameriprise summarizing the discriminatory actions and compliance issues Badgerow experienced during her employment with WMT and attempted to resolve the issues.

<u>**FIRST CAUSE OF ACTION**</u>
**Intentional Discrimination – Hostile Work Environment**
**Title VII (On behalf of Badgerow)**

33. Badgerow incorporates by reference each and every allegation in paragraphs 1-32.

34. Since at least January 1, 2014, WMT has engaged in unlawful and discriminatory employment practices in violation of 42 U.S.C. § 2000e *et seq.*, including subjecting Badgerow to a hostile work environment based on her gender.

35. WMT created and perpetuated a hostile work environment against Badgerow based on her gender.  WMT's Director, Meyer, sent harassing group Skype messages and encouraged other employees to bully and exclude Badgerow at every opportunity, allowing an environment of

disrespect to flourish.

36. WMT's conduct was offensive, severe, unwelcome and pervasive and interfered with her working conditions and term of her employment.  Badgerow sought medical treatment to cope with the anxiety, stress and depression she suffered as a result of the hostile work environment.

37. The hostile work environment occurred with the full knowledge of WMT's Directors, and WMT failed to exercise reasonable care either to prevent this hostile work environment or to correct promptly the hostile work environment once it existed.

38. WMT's conduct was intentional, and done with malice or with reckless indifference to the federally protected rights of Badgerow.

**SECOND CAUSE OF ACTION**
**Intentional Discrimination – Hostile Work Environment**
**LEDL (On Behalf of Badgerow)**

39. Badgerow incorporates by reference each and every allegation in paragraphs 1-38.

40. WMT has violated La. R.S. 23:301 *et seq*. ("LEDL").  by intentionally discriminating against Badgerow with regard to the terms and conditions and privileges of her employment because of her gender.  Specifically, WMT's refusal to accord Badgerow the same privileges accorded to male employees violated LEDL.  In addition to the remedies set forth in Title VII, Badgerow requests that she be awarded all available relief under the laws of the State of Louisiana.

**THIRD CAUSE OF ACTION**
**Discrimination – Disparate Treatment**
**Title VII (On behalf of Badgerow and Class)**

41. Plaintiffs incorporate by reference each and every allegation in paragraphs 1-40 as though fully set forth herein.

42. WMT engaged in a company-wide, and systematic policy, pattern, and/or practice of

discrimination against Plaintiffs on account of their gender, by:

- Refusing to allow females to join males on business development trips such as luxury hunting or fishing trips;

- Denying Plaintiffs the advantage of updated marketing materials after completion of significant career milestones. For example, Badgerow's designation of CRPC was never added to her marketing materials, yet other, male, AFAs were given updated materials and billboards announcing their advancements immediately;

- Utilizing a biased compensation system;

- Utilizing a biased promotion system;

- Requiring female AFAs to punch a timeclock, while male AFAs were not required to punch in; and

- Discouraging female AFAs from becoming client-facing.

43. These WMT policies are intended to and do have the effect of:

- Denying Plaintiffs business opportunities because of their gender;

- Compensating Plaintiffs less because of their gender;

- Failing to promote Plaintiffs because of their gender;

- Evaluating Plaintiffs' performance more negatively because of their gender;

- Creating an unbearable hostile work environment; and

- Providing Plaintiffs with inferior terms and conditions of employment as a result of discriminatory performance measures that systematically disadvantaged them because of their gender.

**FOURTH CAUSE OF ACTION**
**Disparate Pay**
**Equal Pay Act (On behalf of Badgerow)**

44. Badgerow incorporates by reference each and every allegation in paragraphs 1-43 as though fully set forth herein.

45. WMT paid different wages, including base salary and bonuses, to Badgerow as compared with her male counterparts at WMT, even though Badgerow performed equal work on jobs requiring equal skill and responsibility and the jobs of these employees were performed under similar working conditions.

**FIFTH CAUSE OF ACTION**
**Disparate Pay**
**LEDL (On behalf of Badgerow)**

46. Badgerow incorporates by reference each and every allegation in paragraphs 1-45 as though fully set forth herein.

47. WMT's conduct alleged in the preceding paragraphs further violate La. R.S. 23:301 *et seq.*, and in addition to the remedies set forth in the Equal Pay Act, Badgerow requests that she be awarded all available relief under the laws of the State of Louisiana.

**SIXTH CAUSE OF ACTION**
**Retaliation**
**Title VII (On behalf of Badgerow)**

48. Badgerow incorporates by reference each and every allegation in paragraphs 1-47 as though fully set forth herein.

49. On or about July 26, 2016, in the state of Louisiana, WMT engaged in unlawful retaliation in violation of Section 703(a) and 704(a) of Title VII, 42 U.S.C. § 2000e- 2(a) and § 2000e-3(a) by terminating Badgerow on the same day that Ameriprise reported Badgerow's complaints to WMT.

### SEVENTH CAUSE OF ACTION
**Retaliation**
**LEDL (On behalf of Badgerow)**

50. Badgerow incorporates by reference each and every allegation in paragraphs 1-49 as though fully set forth herein.

51. Badgerow has been retaliated against by being terminated in response to her reporting of unfair treatment to Walters, her direct supervisor at WMT, Michael Barker, and Marc Cohen of Ameriprise, WMT's Franchisor, in violation of the LEDL.

### EIGHTH CAUSE OF ACTION
**Conspiracy**
**Federal Civil Rights Conspiracy Provision (On behalf of Badgerow)**

52. Badgerow incorporates by reference each and every allegation in paragraphs 1-51 as though fully set forth herein.

53. WMT and Ameriprise conspired to intentionally and willfully discriminate against Badgerow and to deprive her of her civil rights in violation of 42 U.S.C. § 1985(3).

### NINTH CAUSE OF ACTION
**Conspiracy**
**Conspiracy under State Law (On behalf of Badgerow)**

54. Badgerow incorporates by reference each and every allegation in paragraphs 1-53 as though fully set forth herein.

55. WMT and Ameriprise conspired intentionally and willfully to discriminate and retaliate against Badgerow in violation of Article 2324 of the Louisiana Civil Code.

### TENTH CAUSE OF ACTION
**Joint Employer Liability**
**(On behalf of Badgerow)**

56. Badgerow incorporates by reference each and every allegation in paragraphs 1-55 as though fully set forth herein.

57. Badgerow asserts that Ameriprise has a degree of culpability for her wrongful termination from WMT and, as such, is jointly liable to Badgerow for the aforementioned acts of WMT as a result of its joint employer status with WMT.

### ELEVENTH CAUSE OF ACTION
**Breach of Contract**
**(On behalf of Badgerow)**

58. Badgerow incorporates by reference each and every allegation in paragraphs 1-57 as though fully set forth herein.

59. WMT breached its verbal contract with Badgerow by failing to compensate her as originally agreed, in violation of Article 1994 of the Louisiana Civil Code.

### DEMAND FOR JURY

60. Plaintiffs hereby demand a trial by jury for all issues in this case.

### PRAYER FOR RELIEF

**WHEREFORE**, having set forth her Complaint, Badgerow, on behalf of herself and the Class, respectfully requests that they be awarded all available relief including, but not limited to, a declaratory judgment that the acts and practices of the WMT complained of herein are in violation of the laws of the United States and Louisiana, injunctive relief, an award of lost wages, including lost fringe benefits, which resulted from the unlawful discrimination and retaliation complained of herein, reinstatement or front pay in lieu thereof, compensatory and punitive damages, liquidated damages, and damages for mental anguish, pain, suffering, public embarrassment and humiliation, any other damages that may be proven at trial, pre-judgment and post-judgment interest, attorneys fees, expenses, and costs, and all other and further relief as to this Court appears necessary and proper.

Respectfully Submitted:

**BUSINESS LAW GROUP, LLC**

By: <u>s/Amanda J. Butler</u>
Amanda J. Butler (T.A.)
LSBA # 31644
abutler@lawgroup.biz

Stephanie D. O'Brien
LSBA No. 32620
sobrien@lawgroup.biz

700 Camp St., Ste. 405
New Orleans, LA 70130
Telephone: (504) 528-9500
Facsimile: (504) 754-7776

4839-6018-9263, v. 8