UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| DENISE A. BADGEROW | CIVIL ACTION |
| VERSUS | NO: 17-9492 |
| REJ PROPERTIES, INC., ET AL. | SECTION: "A" (2) |

## ORDER AND REASONS

The following motions are before the Court: **Motion to Dismiss for Failure to State a Claim and to Compel Arbitration (Rec. Doc. 27)** filed by defendant Ameriprise Financial Services, Inc.; **Motion to Dismiss Class Claims and Motion to Compel Arbitration, Dismiss Action, and Strike Jury Demand (Rec. Doc. 26)** filed by defendant REJ Properties, Inc. d/b/a Walters, Meyer, Trosclair & Associates. Plaintiff Denise A. Badgerow opposes the motions. The motions, noticed for submission on December 13, 2017, are before the Court on the briefs without oral argument.[1]

### I. Background

Plaintiff Denise Badgerow has filed this action against REJ Properties, Inc. d/b/a Walters, Meyer, Trosclair & Associates ("WMT") and Ameriprise Financial Services, Inc. WMT is domiciled in Lafourche Parish; Ameriprise's principal place of business is located in Minneapolis, Minnesota. Badgerow's complaint alleges eleven causes of

---

[1] Defendants have requested oral argument but the Court is not persuaded that oral argument would be helpful.

action arising out of her employment with WMT.

Ameriprise is a registered broker dealer that offers financial products and services to customers through several models, including through a franchisee-based platform of independent advisors who own and operate their own businesses, as franchises. (Rec. Doc. 27-2, Odash decl. ¶ 3). The principals of WMT—Gregory Walters, Thomas Meyer, and Roy Trosclair—were independent franchise advisors for Ameriprise during the period of Badgerow's employment. (*Id.* ¶ 4). Ameriprise did not have a franchise agreement with REJ Properties, Inc. (*Id.* ¶ 5).[2]

After completing a 90-day probationary period with WMT, Badgerow was promoted to Associate Financial Advisor ("AFA") on January 1, 2014. (Rec. Doc. 1, Complaint § 12). Her work as an AFA was supervised by Gregory Walters, one of three directors at WMT. (*Id.* ¶ 12).

Badgerow contends that she had an oral agreement with WMT that she would receive a base salary of $30,000 per year plus commissions. Badgerow was not provided a written compensation agreement. (*Id.* ¶ 14). Badgerow complains that WMT retroactively changed her compensation structure in October 2014 after she made a large commissioned sale. (*Id.* ¶ 15). Badgerow alleges that the new compensation

---

[2] Ameriprise alludes to the rule that when considering a motion to dismiss, the district court generally must limit itself to the contents of the pleadings and the attachments thereto. *See Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498-99 (5th Cir. 2000). The declaration of Karen Odash, Senior Manager—Legal Affairs for Ameriprise's parent entity, is not part of the pleadings and is neither referred to in the complaint nor central to Badgerow's claims. *See id.* at 499) (citing *Venture Assocs. Corp. v. Zenith Data Sys. Corp.*, 987 F.2d 249, 431 (7th Cir. 1993)). Plaintiff has not objected to any of the documents attached to either motion to dismiss. Nonetheless, the Court remains mindful when considering extraneous documents that discovery is not complete. Thus, the Court includes the foregoing information from Odash's declaration merely as helpful background information and not as established fact.

structure was enforced only against her and not against similarly situated male employees. (*Id.* ¶ 17). She also alleges that she was earning quarterly bonuses that were half the amount of her male counterparts. (*Id.* ¶ 24).

Badgerow also alleges that she was subjected to constant office harassment after she declined to work as Walters' assistant. The harassment was instigated by Tommy Meyer, another director at WMT, and his team, including other females. (*Id.* ¶¶ 20-21). Even though Badgerow was promoted to the role of Financial Advisor ("FA"), Meyer determined that all FAs would keep the title of "associate" until they attained five years of service with WMT. (*Id.* ¶ 23). In December 2015, after complaining constantly to Walters, Badgerow was moved to a separate office to avoid any further distress to Meyer, segregating her from the rest of the WMT team and putting her in an office all by herself. (*Id.* ¶ 25).

On July 26, 2016, Walters terminated Badgerow after she refused to resign. (*Id.* ¶ 29). According to the Complaint, Walters fired Badgerow in retaliation for speaking with Marc Cohen, a compliance officer with Ameriprise.³ (*Id.* ¶ 29).

---

³ The first element of a prima facie case of Title VII retaliation is that the employee engaged in activity protected by Title VII. *Porter v. Houma Terrebonne Housing Auth. Bd.*, 810 F.3d 940, 945 (5th Cir. 2015) (citing *Hernandez v. Yellow Trans., Inc.*, 670 F.3d 644, 657 (5th Cir. 2012)). The Court notes from reading Badgerow's FINRA Arbitration Statement of Claim that Cohen is not an EEO compliance officer but rather works for Ameriprise as a compliance officer with respect to its Compliance Financial Manual. (Rec. Doc. 27-2 at 2). In fact, Badgerow alleges in her Complaint that Cohen had told her on several occasions that neither he nor Ameriprise could help her with respect to discrimination issues at WMT. (Complaint ¶ 27). In her Arbitration Statement Badgerow links her termination to reprisal based on her statements to Cohen about the payment source of her commissions. Retaliation on this basis is not actionable under Title VII because reporting non-compliance with Ameriprise's Financial Manual is not a protected Title VII activity. To the extent that Badgerow is alleging that she was fired in retaliation for reporting sexual discrimination to Cohen, the question of whether this activity is "protected activity" for purposes of Title VII is not currently before the Court.

Badgerow filed a Charge of Discrimination against WMT on September 8, 2016, claiming gender discrimination and retaliation. (Rec. Doc. 27-3 at 5). On October 6, 2016, she amended the charge to include class allegations. (*Id.* at 8). On June 27, 2017, the EEOC issued a dismissal and notice of rights (*Id.* at 13).

Badgerow filed the instant action and jury demand on September 22, 2017, against WMT and Ameriprise. Badgerow's Complaint, which ostensibly alleges eleven causes of action, asserts claims for violations of Title VII (gender-based hostile work environment and retaliation), and the Equal Pay Act, 29 U.S.C. § 206(d)(1) (disparate pay based on gender).[4] Badgerow's third cause of action is for disparate treatment based on gender and she purports to bring that claim on behalf of a class of similarly-situated females. For purposes of the foregoing discrimination claims, Badgerow alleges that WMT and Ameriprise were joint employers. Badgerow's eleventh cause of action is for breach of contract against WMT.[5]

---

[4] These claims are also asserted under state law, Louisiana's Employment Discrimination Law, La. R.S. § 23:301, *et seq*. Louisiana courts rely upon Title VII standards when addressing liability for LEDL claims, *see Plummer v. Marriott Corp.*, 654 So. 2d 843 (La. App. 4th Cir. 1995), but the Louisiana legislature chose to deviate from Title VII when defining the term "employer." The definition of an "employer" for purposes of an LEDL claim is far narrower than the Title VII definition. This Court has no doubt that Ameriprise will not satisfy the state law definition of "employer" because there are no allegations suggesting that Ameriprise received services from Badgerow or paid her compensation. *See* La. R.S. § 23:302(2); *Dejoie v. Medley*, 9 So. 3d 826 (La. 2009).

[5] Two other causes of action fail as a matter of law. First, Badgerow's eighth cause of action is for a federal civil rights conspiracy under 42 U.S.C. § 1985(3). This statute, which requires racial animus as an element, is inapplicable to Badgerow's gender-based discrimination claims.
    Second, Badgerow's ninth cause of action is for conspiracy under state law pursuant to Louisiana Civil Code article 2324. Civil conspiracy is not an actionable claim under Louisiana law. *Crutcher-Tufts Res., Inc. v. Tufts*, 992 So. 2d 1091, 1094 (La. App. 4th Cir. 2008) (citing *Ross v. Conoco, Inc.*, 828 So. 2d 546 (La. 2002) (explaining that it is the tort that the conspirators agreed to perpetrate and which they actually commit that constitutes the actionable elements of the claim)). Article 2324 expressly pertains to intentional torts under Louisiana law. No state law intentional tort is alleged in this case.

WMT and Ameriprise now move separately to dismiss the case for failure to state a claim and to compel arbitration.

## II. Discussion

The Court begins with Ameriprise's motion to compel arbitration.[6] The threshold determination that the Court must make is whether the parties entered into "any arbitration agreement at all." *Archer & White Sales, Inc. v. Henry Schein, Inc.*, No. 16-41674, -- F.3d -- , 2017 WL 6523680 (5th Cir. Dec. 21, 2017) (quoting *Kubala v. Supreme Prod. Servs., Inc.*, 830 F.3d 199, 201 (5th Cir. 2016)). This inquiry is one of pure contract formation, and it looks only at whether the parties formed a valid agreement to arbitrate some set of claims. *Id.* (citing *IQ Prods. Co. v. WD-40 Co.*, 871 F.3d 344, 348 (5th Cir. 2017)).

It is beyond dispute that Badgerow and Ameriprise have an agreement to arbitrate. In fact, the record contains three agreements to arbitrate by Badgerow in favor of Ameriprise. The first is contained in a FINRA Form U4 that Badgerow executed in conjunction with her employment. (Rec. Doc. 27-2). Part 15A(5) of that document provides that Badgerow will arbitrate any dispute, claim, or controversy that may arise between her and her firm. The "firm" identified in the U4 is Ameriprise Financial

---

[6] Ameriprise's preference is to have this Court dismiss all of Badgerow's claims pursuant to Rule 12(b)(6), and failing a dismissal of all claims, to compel arbitration as to any surviving claims. While it is perfectly acceptable to move for dismissal as an alternative to a motion to compel arbitration, Ameriprise cannot have it both ways without risking a waiver of its arbitration rights. In short, since Ameriprise has moved to compel arbitration without agreeing to waive arbitration as to any specific claims, this Court will not act on Ameriprise's merits-based arguments and instead leaves all of them for the arbitration.

Services, Inc.[7]

The second is contained in Part 9A of an AFG Registered Staff Agreement between Ameriprise and Badgerow. (Rec. Doc. 26-2 at 4). Pursuant to this arbitration provision, unless otherwise agreed to in writing by both parties, Badgerow agreed to arbitrate any claim that may arise between her and Ameriprise.

The third is contained in Part 9A of an Associate Financial Advisor Agreement between Ameriprise and Badgerow. (Rec. Doc. 26-3 at 5). Pursuant to this arbitration provision, unless otherwise agreed to in writing by both parties, Badgerow agreed to arbitrate any claim that may arise between her and Ameriprise.

The Court is persuaded that Badgerow's claims against Ameriprise must be arbitrated. Ameriprise's motion to compel arbitration is GRANTED in that all of Badgerow's claims against Ameriprise will be decided in the FINRA arbitration (and if not FINRA, AAA)[8] and shall be stayed in this Court.[9]

---

[7] FINRA is "a quasi-governmental agency responsible for overseeing the securities brokerage industry." *McCune v. United States Sec. & Exch. Comm'n*, 672 F. App'x 865, 866 (10th Cir. 2016) (quoting *ACAP Fin., Inc. v. United States SEC*, 783 F.3d 763, 765 (10th Cir. 2015)). FINRA requires any person who works in the investment banking or securities business of a FINRA member firm to register as a securities representative (*e.g.,* a stockbroker) or principal, among other categories. *Mathis v. United States S.E.C.*, 671 F.3d 210, 211 (2nd Cir. 2012). To register, applicants must complete a Form U4, in which they provide detailed information about their personal, employment, disciplinary, and financial background. *Id.*

[8] The AFG Registered Staff Agreement and the Associate Financial Advisor Agreement both provide that claims not subject to FINRA arbitration will be subject to arbitration by the American Arbitration Association.

[9] Regarding the Form U4 arbitration clause, Badgerow points out that FINRA Rule 2263 requires that a written statement be provided when a person is asked to sign an amended Form U4, and that Ameriprise has not included in its exhibits any evidence that such a statement was given to Badgerow. Badgerow's argument in this vein is confusing for several reasons, the most obvious being that she does not suggest that the factual predicates necessary to trigger Rule 2263 were satisfied. And Badgerow cites no controlling authority for the proposition that she can escape the otherwise valid agreement to arbitrate based on FINRA Rule 2263.

The Court now turns to WMT's motion which seeks various elements of relief from the Court—dismiss Badgerow's class claims, strike Badgerow's jury demand, compel arbitration for individual claims—all based on the second and third arbitration agreements (the AFG Registered Staff Agreement and the Associate Financial Advisor Agreement) *between Badgerow and Ameriprise* referred to above when the court addressed Ameriprise's motion. In other words, unlike Ameriprise, WMT and Badgerow have not entered into an agreement to arbitrate their claims.

WMT makes two arguments that it has standing to enforce the Ameriprise arbitration agreements against Badgerow. First, WMT points out that Gregory Walters, one of its principals, signed the agreements. While Walters did sign the agreements, he did so in his capacity as "independent advisor," not as a principal of REJ Properties/WMT, the defendant entity that actually employed Badgerow. (Rec. Doc. 26-2, 26-3). According to Ameriprise, and this point is undisputed, it had no contractual relationship with an entity called REJ Properties much less WMT, which again is the defendant in this case.[10] Neither Walters nor any of the other WMT principals have suggested that they should have been sued personally as Badgerow's employer. Nonetheless, the Ameriprise agreements that contain the arbitration clauses could not be clearer in that the only two parties to those agreements are Badgerow and Ameriprise. Neither Walters nor REJ Properties nor WMT are parties to those agreements.

---

[10] WMT attached a copy of the franchise agreement with American Express Financial Advisors, Inc., presumably Ameriprise's predecessor, but WMT is not a party to that agreement. (Rec. Doc. 26-4).

Second, WMT argues that it was a third-party beneficiary of the AFG Registered Staff Agreement and the Associate Financial Advisor Agreement, again two contracts between Ameriprise and Badgerow. WMT argues that it agreed to indemnify Ameriprise for employment claims in consideration of being a beneficiary of the arbitration clauses.

This argument misses the mark because it focuses solely on agreements between Walters, as an independent advisor, and Ameriprise. The issue is whether any contract to arbitrate exists between Badgerow and REJ Properties/WMT. Simply, there is none. And none of Badgerow's claims against WMT in this case are grounded on obligations arising out of her agreements with Ameriprise. WMT's motion, which relies solely on terms in agreements that Badgerow had with Ameriprise, is DENIED in all respects.

Accordingly, and for the foregoing reasons;

**IT IS ORDERED** the **Motion to Dismiss for Failure to State a Claim and to Compel Arbitration (Rec. Doc. 27)** filed by defendant Ameriprise Financial Services, Inc. is **GRANTED** insofar as all of Badgerow's claims against Ameriprise in this action are stayed pending arbitration;[11]

**IT IS FURTHER ORDERED** that the **Motion to Dismiss Class Claims and Motion to Compel Arbitration, Dismiss Action, and Strike Jury Demand (Rec. Doc. 26)** filed by defendant REJ Properties, Inc. d/b/a Walters, Meyer, Trosclair & Associates is **DENIED** in all respects except that Badgerow's eighth (federal civil

---

[11] The Court has no concerns in essentially severing the claims against the two defendants even though Badgerow has alleged joint employer status between them. The primary focus of the joint employer test is to hold accountable the entity that actually discriminated against the plaintiff. *See Skidmore v. Precision Printing & Pkg.*, Inc. 188 F.3d 606, 617 (5th Cir. 1999) (citing *Trevino v. Celanese Corp.*, 701 F.2d 397 (5th Cir. 1983)). Badgerow's own factual allegations that recount the specific treatment that she believes to be discriminatory occurred at the hands of WMT and its staff, not Ameriprise.

rights conspiracy under 42 U.S.C. § 1985(3))and ninth (conspiracy under state law pursuant to Louisiana Civil Code article 2324) causes of action are dismissed for failure to state a claim.

January 10, 2018

_____
JAY C. ZAINEY
UNITED STATES DISTRICT JUDGE