## IN THE UNITED STATES DISTRICT COURT

## FOR THE EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| **DENISE A. BADGEROW,** | * | **CIVIL ACTION NO. 2:17-cv-09492** |
| **on behalf of herself and a class of those** | * | |
| **similarly situated,** | * | **JUDGE JAY C. ZAINEY** |
| **Plaintiffs,** | * | |
| **v.** | * | **MAG. JOSEPH C. WILKINSON, JR.** |
| | * | |
| **REJ PROPERTIES, INC. D/B/A** | * | |
| **WALTERS, MEYER, TROSCLAIR &** | * | |
| **ASSOCIATES, AND AMERIPRISE** | * | |
| **FINANCIAL SERVICES, INC.,** | * | |
| **Defendants** | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

### REJ PROPERTIES, INC. D/B/A WALTERS, MEYER, TROSCLAIR & ASSOCIATES' OPPOSITION TO PLAINTIFF'S MOTION FOR LEAVE TO FILE FIRST AMENDED AND SUPPLEMENTAL COMPLAINT

Defendant, REJ Properties, Inc. d/b/a Walters, Meyer, Trosclair & Associates ("REJ") opposes Denise Badgerow's ("Badgerow") Motion for Leave to File First Amended and Supplemental Complaint ("Amended Complaint") on multiple grounds.

### I.   Introduction.

Badgerow seeks to add three (3) individual defendants, Gregory A. Walters ("Walters"), Thomas J. Meyer ("Meyer"), and Ray A. Trosclair ("Trosclair"), who were the three Franchise Advisors who managed and operated the financial advising practice group known as Walters, Meyer, Trosclair and Associates ("WMT").[1]   Walters, Meyer and Trosclair were individual respondents in the parallel Financial Industry Regulatory Authority ("FINRA") Arbitration No. 16-02759 filed by Badgerow, about which the Court is aware.   All claims in that case against those three respondents were dismissed, with prejudice, on December 27, 2018.[2]

---

[1]   As explained in REJ's Memorandum in Support of its Motion for Summary Judgment (R. Doc. 73-1, p.4), WMT was a "d/b/a" or branding name recognized by Ameriprise Financial Services, Inc. to allow these three Franchise Advisors to practice and market as a team.   The practice group, WMT, dissolved in October 2016.

[2]   Badgerow has attached the FINRA award to her Motion for Leave (R. Doc. 68-3), so it will not be attached herein again.

Badgerow has now re-urged some of the dismissed claims herein in her proposed Eighth and Ninth Causes of Action in the proposed Amended Complaint under the Louisiana Whistleblower Protection Act, LA. REV. STAT. § 23:967 ("LWPA") and LA. REV. STAT. § 51:1401, *et seq.* ("LUTPA"). (R. Doc. 68-4, ¶¶ 115–120.)  Fifth Circuit precedent clearly holds that these arbitrated claims are barred from further litigation under collateral estoppel principles. She further seeks to pierce the corporate veil of REJ to indirectly assert the dismissed FINRA claims against the same individuals.  Remarkably, she also includes Trosclair in this effort, even though she admits in her pleading that he did not own any interest in REJ at any time.

In bringing these already-dismissed claims, Badgerow seeks to relitigate the same core issue decided against her in the FINRA proceeding of whether REJ was required, under FINRA rules and/or SEC laws and regulations, to be a licensed broker-dealer in order to pay Badgerow commissions.  If so, Badgerow claims her allegedly blowing the whistle on this alleged violation triggered liability under the LWPA and that her termination also violated LUTPA as an alleged unethical or unfair business practice.  All those claims were flatly rejected by the FINRA Panel. REJ was not a party in that proceeding, but the proposed defendants, Walters, Meyer and Trosclair, were.  Now, Badgerow attempts to raise these same claims against them individually by asking that the Court disregard REJ as a corporate entity; the Court should deny Badgerow a second bite at this firmly decided apple.

Her LWPA and LUTPA claims are also facially prescribed and/or preempted under Louisiana law and there is no basis for relation-back under Fed. R. Civ. P. 15(c), demonstrating the futility of her proposed amendment.  Based on her own lack of diligence and dilatory tactics, Badgerow cannot meet either the "good cause" requirement under Fed. R. Civ. P.16(b) or even the more liberal amendment standard of Fed. R. Civ. P. 15(a), if it were to apply, and thus her Amended Complaint should be denied.

2

In addition, Badgerow seeks to add an Eleventh Cause of Action[3] for breach of contract claiming, for the first time, there was an agreement between her and REJ to pay her 70% of her commissions as an independent contractor at the time she opened a branch office in Houma.  The evidence demonstrates that the underlying facts were known to Badgerow when she was employed with REJ in May and June 2016 and she has offered no reason for her delay in bringing this claim before the Court.  There is no "newly-discovered evidence" giving rise to this contract claim, but rather it is based on alleged communications that Badgerow had with Greg Walters more than two-and-a-half years ago.  **Exhibit A**, excerpted Badgerow Deposition Transcript at 227:9–16.  There is no good reason this claim was not included in the original Complaint filed against REJ, and to argue it was somehow unknown to her until several weeks ago is simply disingenuous.

Therefore, this Court should deny Badgerow's request to add claims that (1) have been known to her for years, (2) were already definitively resolved through arbitration, (3) are time-barred under Louisiana law, and (4) are made vindictively and in bad faith against Walters, Meyer and Trosclair.

## II.   Badgerow Seeks to Relitigate Dismissed Claims Against Dismissed Parties.

### A.  Badgerow's Claims in the FINRA Proceeding.

Walters, Meyer and Trosclair are all licensed financial advisors and, as such, were each named respondents in FINRA Case No. 16-02759, along with Ameriprise Financial Services, Inc. ("Ameriprise").  Ameriprise is the entity with which each individual proposed defendant is licensed to be a Franchise Advisor.  Badgerow was an Associate Financial Advisor ("AFA") and also had her license with Ameriprise through Walters as an FA.

---

[3]   There is no tenth cause of action presented in the proposed Amended Complaint.

Badgerow's claims against Ameriprise were dismissed at the conclusion of her case in the arbitration on August 28, 2018. (R. Doc. 68-3, p.5.)   The three individual respondents (Walters, Meyer and Trosclair) also made motions to dismiss.   The FINRA panel of arbitrators ("FINRA Panel") at the conclusion of Badgerow's case elected to suspend the hearing and have briefing and argument on the three respondents' motions to dismiss.   The matters were fully briefed by both sides, and oral argument was held on November 20, 2018.   On December 27, 2018, the Panel dismissed all of Badgerow's claims "with prejudice."

The FINRA Panel, in its award, described Badgerow's claims as follows:

Claimant asserted the following causes of action: non-party REJ Properties, Inc. d/b/a Walters, Meyer, Trosclair & Associates' ("Company") unwritten compensation agreement and payment method of commissions violated SEC and FINRA regulations; Claimant was fired in retaliation for reporting the Individual Respondents' conduct to Ameriprise in violation of Louisiana Law.

In the FINRA proceeding, Badgerow first claimed a LUTPA violation, because her AFA agreement with Ameriprise contained a non-solicitation clause, which, on its face, was not consistent with Louisiana law. **Exhibit B**, Badgerow's Second Amended and Restated Statement of Claim ("FINRA Complaint"), p. 13-15.   The evidence at the FINRA hearing, however, was that none of the respondents did anything to enforce that agreement, and she was free to solicit as a customer whomever she wanted.   Badgerow has not re-urged that claim herein,[4] but at the FINRA hearing, and in post-hearing briefing, she raised another LUTPA issue claiming REJ's alleged violation of the LWPA created an illegal, immoral, unethical act for purposes of LUTPA. The FINRA Panel dismissed Badgerow's modified LUTPA claim.

Specifically, Badgerow claimed, in the FINRA proceeding, that the manner in which she was paid by REJ violated § 17(a) of the 1934 Securities and Exchange Act ("SEA"), 15 U.S.C.

---

[4]   Badgerow has also dropped her tortious interference of contract claim wherein she vaguely alleged that the respondents interfered with her AFA agreement with Ameriprise or, conversely, that Ameriprise interfered with her verbal agreement with REJ. (Ex. B, p. 12-13.)

255319.2

§ 78(a), and FINRA Rule 2040. Ex. B, p. 7-10.  Although no private right of action exists under 17(a), it was still the basis of her whistleblower claim pursuant to the LWPA, and, in part, her claim under LUTPA. *Id.*, p. 7-12, 13-15.  Badgerow first argued to the FINRA panel that it was a legal requirement that she be paid by Ameriprise's third-party approved vendors (*i.e.*, payroll services), such as "Paychex" and "EmployShare."   However, the evidence introduced in the hearing, that payment of commissions (known as GDC) be made through these third-party vendors, was Ameriprise's policy and not the law.  The SEC regulations implementing Rule 17(a) only require that those paying commissions keep accurate books and records regarding the commissions--not that a third-party vendor make those payments.  15 U.S.C. § 78(a), *et seq.*; 17 C.F.R. § 240.17(a) - 3(19)(i)(ii).

In light of the overwhelming adverse testimony, Badgerow seized upon a new theory, which is actually even more tortured.  She claimed in the hearing, in her post-hearing briefing, and now herein, that REJ needed to be licensed as a broker-dealer to pay her commissions.  **Exhibit C**, Badgerow Opposition to Respondents' Motion to Dismiss, p. 13-20; R. Doc. 68-4, Am. Compl., ¶¶ 40-43.  At pages 13–20 of her opposition to the motion to dismiss, Badgerow argued at length that REJ needed to be registered as a broker-dealer, because it was directly paying her commissions as an AFA.  The purported requirement that REJ must register as a broker-dealer became the fulcrum of all of Badgerow's claims in the FINRA proceeding and, because it was based on a false premise, the FINRA Panel dismissed her case.  Proposed defendants, Walters, Meyer and Trosclair, in a consolidated reply brief in support of their motion to dismiss in the FINRA proceeding, stated the following:

> The notion that REJ should be licensed as a broker-dealer is pure folly and if accepted by the Panel, would turn the securities industry on its ear, because many licensed financial advisors use juridical entities to pay staff, rent, utilities and, yes, AFAs.   There is no legal requirement that REJ be licensed as a broker-dealer or have any other kind of securities license.   To refocus the Panel's inquiry,

> Badgerow's initial complaint and her comments during the 2016 annual
> compliance call with Marc Cohen of Ameriprise related only to the fact that she
> was not being paid by one of two payroll services, Paychex or EmployShare.
> Cohen, however, testified that those entities are not licensed as broker-dealers
> either.   Because REJ does not need to be licensed there can be no violation of law
> -- state or federal.

**Exhibit D**, Reply Brief in Support of Respondents' Motion to Dismiss, p. 2.

As the Court can see from the above-quoted memoranda, the issue of whether REJ should be

licensed as a broker-dealer was squarely before the FINRA Panel, and it correctly rejected

Badgerow's argument to that effect.

Badgerow also claimed in the FINRA proceeding that REJ violated FINRA 2040 by not

being a registered broker-dealer.  Rule 2040 provides:

> No member or associated person shall, directly or indirectly, pay any
> compensation, fees, concessions, discounts, commissions or other allowances <u>to</u>:
> (1) any person that is not registered as a broker-dealer under Section 15(a) of the
> Exchange Act but, by reason of receipt of any such payments and the activities
> related thereto, is required to be so registered under applicable federal securities
> laws and SEA rules and regulations; or (2) any appropriately registered associated
> person unless such payment complies with all applicable federal securities laws,
> FINRA rules and SEA rules and regulations.

FINRA Manual, Rule 2040(a)(1)–(2), available at  http://finra.complinet.com/en/display/

display_main.html?rbid=2403&element_id=11780 (last accessed Jan. 25, 2019).

A careful reading of Rule 2040 indicates that the commission payments to Badgerow do

not violate any FINRA rule or the SEA rules and regulations.   In the FINRA proceeding,

Badgerow's counsel completely failed to understand the testimony of Michael David Barker, an

Ameriprise Franchise Field Vice-President, that once Ameriprise (*i.e.,* a FINRA member and a

licensed broker-dealer) pays commissions to the FAs (*i.e.,* "registered associated persons"), the

money is then fungible and the FAs are free to transfer it to REJ in order to pay its operating

costs, such as utilities, payroll taxes, property taxes, or any other expenses of REJ as a viable

separate entity. **Exhibit E**, excerpted Aug. 28, 2018 FINRA Hearing Transcript ("FINRA Tr.")

at 130:11–131:9. The aforementioned rule specifically points out that, if the recipient of a commission is licensed (*i.e.,* "to … the appropriately registered associated person"), the payment by REJ directly <u>to</u> Badgerow was permissible. The FINRA Panel agreed and found accordingly in favor of Walters, Meyer and Trosclair.

Despite the fact the FINRA Panel explicitly found no violation of SEA § 17(a), the SEC regulations thereunder, or FINRA Rule 2040, Badgerow asserts in her proposed Amended Complaint that, because she "turned in" REJ to an Ameriprise compliance representative, she is protected from retaliation as a whistleblower pursuant to the LWPA. (R. Doc. 68-4, ¶¶ 115–118.) The LWPA "targets serious employer conduct that violates the law." *Ricalde v. Evonik Stockhausen, LLC*, 202 So. 3d 548, 552 (La. App. 5 Cir. 9/22/16), *writ denied*, 212 So. 3d 1170 (La. 12/16/16). There, however, must be an <u>actual violation</u> of a <u>state statute</u>, otherwise an employee is not entitled to protection under § 967. *See Smith v. Diamond Offshore Mgmt. Co.*, No. Civ. A. 03-2024, 2003 WL 23095586, at *5 (E.D. La. Dec. 23, 2003) (granting motion to dismiss § 967 claim where plaintiff's allegations did not constitute a violation of Louisiana wage laws and thus his threatened report did not grant whistleblower protection); *Gaspard v. Bechtel Oil, Gas & Chems. Constr. Servs.*, No. 2:16-01431, 2018 WL 2671230, at *5–6 (W.D. La. June 4, 2018) (holding that plaintiff must prove an actual violation of state law in order to present a viable claim under § 967) (citing *Accardo v. La. Health. Serv. & Indem. Co.*, 2005-2377 (La. App. 1 Cir. 6/21/06), 943 So. 2d 381, 384, *et al.*). Here, neither requirement is satisfied.

In the FINRA proceeding, in order to show that the violation involved state law, Badgerow cited multiple provisions of the Louisiana Administrative Code, which she claimed adopted Federal Securities law, but none of which were applicable to the current situation.[5] Like § 17(a) of the SEA, and the SEC regulations thereunder, these Administrative Code provisions

---

[5]   10 La. Admin. Code PT VIII § 1701; 10 La. Admin. Code PT VIII § 1201, 1203 and 1205.

provide no private right of action. And because there was no violation of any federal law or regulation, there can be no basis for finding a violation of the Louisiana Administrative Code. It then logically follows that there were no violations of the LWPA or LUTPA.

The FINRA award describes briefly what happened at the FINRA hearing on August 27 and 28, 2018:

> The case proceeded to hearing on August 27 and 28, 2018. After the close of Claimant's case, Ameriprise and Meyer made oral motions to dismiss, and Walters and Trosclair renewed their motion to dismiss. Claimant opposed all motions. After hearing arguments of counsel, the Panel granted Ameriprise's motion to dismiss on the basis that Claimant failed to prove Ameriprise was a "joint employer." The Individual Respondents' motions to dismiss were deferred pending additional briefing by the parties.

Then, the award delineates the ultimate disposition of Badgerow's claims:

> On November 20, 2018, the Panel and the Individual Respondents held a recorded in-person conference to hear the parties' oral argument on the Individual Respondents' motions to dismiss. The Individual Respondents argued that Claimant's theories of recovery were legally and/or factually without merit. Claimant opposed the motions to dismiss. After due deliberation, the Panel granted the Individual Respondents' motions to dismiss and found that Claimant did not: 1) establish liability for the Individual Respondents under the Louisiana Whistleblower Act; 2) prove a tortious interference with contract claim against the Individual Respondents; and 3) prove any claim against the Individual Respondents under the Louisiana Unfair Trade Practice Act or establish any other basis for recovery under the Amended and Restated Statement of Claim.

(R. Doc. 68-3, p. 5.)

Accordingly, the ruling is that there is no violation of the LWPA or LUTPA and no "*other basis for recovery under the Amended and Restated Statement of Claim.*" (R. Doc. 68-5, p. 5) (emphasis added).

8

**B.  *Badgerow Reasserts the Same Claims in Her Amended Complaint.***

In her proposed Amended Complaint, Badgerow is attempting to reassert the dismissed claims against the same three FAs who were respondents in the FINRA proceeding, as well as REJ, who was not and could not be a party to the FINRA proceeding as a non-registered entity.[6]

In her introductory paragraph in the proposed First Amended and Supplemental Complaint, Badgerow states the following:

> This lawsuit seeks monetary relief and other damages for violations of . . . LA. REV. STAT. Ann. § 23:967 (the "Louisiana Whistleblower Statute"), and LA. REV. STAT. Ann § 51:1401, *et. seq* (the "Louisiana Unfair Trade Practices Act").

(R. Doc. 68-4, p. 1.)  Those exact claims were asserted in the FINRA proceeding.  Moreover, Badgerow alleges the following, which serves as a precursor to Badgerow's Eighth and Ninth Causes of Action:

> 13.  This action is further brought to remedy the unfair trade practices of REJ and/or WMT.
>
> 14.  This action is brought to remedy the retaliation of REJ and/or WMT by terminating Plaintiff for engaging in protected activity under the Louisiana Whistleblower Statute.

(R. Doc. 68-4 at ¶¶ 13–14.)

> Badgerow then avers as follows:
>
> 40. REJ Properties Inc. was not registered as a Broker-Dealer with the Securities and Exchange Commission (SEC) or with the Financial Industry Regulatory Authority (FINRA).
>
> 41. REJ was used to avoid the oversight and regulation of the financial services industry, including the SEC, FINRA and the Louisiana Office of Financial Institutions (LOFI).

---

[6]   FINRA governs those entities and individuals that it has jurisdiction over: only members and associated persons can be part of FINRA arbitration proceedings.  FINRA Manual, Rule 13200, available at http://finra.complinet.com/en/display/display_main.html?rbid=2403&element_id=4203 (last accessed Jan. 28, 2019).  When Badgerow filed her FINRA Arbitration claim, there was no doubt that she knew REJ was not subject to FINRA jurisdiction, which is precisely why she did not name REJ.  In fact, an essential part of her argument was that REJ was not a licensed broker-dealer, yet should have been. Ex. B, FINRA Complaint, p. 2.

42. Accordingly, this Court should pierce the corporate veil and hold Walters, Meyer and Trosclair liable for REJ's obligations.

43. REJ failed to provide Denise Badgerow with a written compensation agreement, as required of all Broker-Dealer.

(R. Doc. 68-4 ¶¶40–43.)  In these paragraphs, Badgerow raises in this proceeding the exact claims decided by the FINRA Panel regarding REJ's lack of registration as a broker-dealer.[7]

Further demonstrating that Badgerow is reasserting the same claims that were presented to and decided by the FINRA Panel, paragraphs 68 through 70 provide:

68. In 2015, Badgerow inquired to Walters as to why she was not receiving her compensation from Employshare, a third-party provider that paid all the other male FAs except for Badgerow.

69. Walters responded that Employshare was too expensive to use, and asked Badgerow to research other Ameriprise approved payroll providers.

70. After speaking with Paychex, Badgerow told Walters that the method of paying her through REJ was not "compliant," and she needed to be paid directly through a third-party payroll provider to be compliant.

(R. Doc. 68-4 ¶¶ 68–70.)  As before with FINRA, Badgerow now confuses her two arguments, *i.e.,* (1) that a third-party vendor needed to pay Badgerow commissions; and/or (2) that REJ needed to be registered as a broker-dealer in order to pay her commissions.

Paragraphs 78 through 80 provide as follows:

78. On July 13, 2016, Badgerow spoke with Marc Cohen, a compliance officer of Ameriprise. Badgerow expressed many of her concerns to Marc Cohen, including that she was not being paid compliantly and that she was being treated differently either because she was a female or because she was not a family member.

79. Badgerow is required to have annual compliance calls with an Ameriprise Compliance Officer pursuant to the terms of her agreement with Ameriprise and is required to report any compliance issues.

---

[7]  In ¶ 42 of the Amended Complaint, Badgerow, once again, claims that Trosclair should be held liable as an owner of REJ.  He is not an owner of REJ, as she acknowledges when she pleads, in ¶¶ 22 and 23, that only Walters and Meyer were the owners.  Both the deposition and FINRA testimonies are to that effect. **Exhibit F,** excerpted Walters Deposition Transcript at 24:14-25:11, **Exhibit G,** excerpted Meyer Deposition Transcript at 20:22-21:15, Ex. E, excerpted Aug. 27, 2018, FINRA Tr. at 319:25-320:20.

> 80. Badgerow told Marc Cohen that REJ Properties was paying her commissions and sent him a copy of her paystub.

(R. Doc. 68-4, ¶¶ 78–80.)  Again, these are the same claims as were before FINRA.  Badgerow received a call from Marc Cohen, which was a typical compliance call by Ameriprise.  In that conversation related to the proposed opening of a separate office, Cohen asked Badgerow how she was being paid.  As Cohen testified in the FINRA hearing, Ameriprise's policy was to use approved third-party vendors to handle payroll.  That, however, as also determined by the FINRA Panel, is not the law.  Moreover, the Ameriprise representatives testified specifically at FINRA that REJ did not need to be registered as a broker-dealer, because Rule 2040 under FINRA requires that the recipient of a commission be registered—not the payer.[8]

Lastly, in the Eighth and Ninth Causes of Action, Badgerow alleges "whistleblower" liability under the LWPA and unfair trade practices under LUTPA on the part of defendants.  She says specifically, as part of paragraph 120:

> 120. . . . REJ's failure to registered *[sic]* as a Broker-Dealer is an unfair trade practice for a financial services business and such fraud was used as a means to avoid the legal and regulatory oversight of FINRA, the SEC and the Louisiana Office of Financial Institutions. By failing to properly register as a Broker Dealer, REJ avoided the record keeping requirements of Broker Dealers, including the requirement of maintaining a written compensation agreement for Badgerow that reflected how her commissions were to be paid.

Both of those claims were decided adversely to Badgerow in the FINRA proceeding.  (R. Doc. 68-3, p. 5.)

### C. Badgerow's Proposed Whistleblower and Unfair Trade Practices Claims Are Barred by Collateral Estoppel/Issue Preclusion.

Under Fifth Circuit precedent, collateral estoppel, or issue preclusion, applies to bar relitigation of issues already adjudicated in another judicial, or extra-judicial, forum when the following elements are met: (1) the issue at stake is identical to the one involved in the prior

---

[8]   Testimony of Marc Cohen and Michael Barker, Ex. E, excerpted Aug. 28, 2018 FINRA Tr. at 63:14-64:22 and 130:21–131:9, respectively.

255319.2

action; (2) the issue was actually litigated in the prior action; and (3) the determination of the issue was a part of the judgment or ruling issued in the prior action. *Petro-Hunt, LLC v. United States*, 365 F.3d 385, 397 (5th Cir. 2004); *In re Southmark Corp.*, 163 F.3d 925, 932 (5th Cir. 1999) (quoting *RecoverEdge L.P. v. Pentecost*, 44 F.3d 1284, 1290 (5th Cir. 1995)).   Unlike the traditional doctrine of *res judicata*, collateral estoppel does not require a final judgment issued by a state or federal court of competent jurisdiction, as long as the issues in the two proceedings are identical and were disposed of in the prior action. *Id.*

A district court holds "broad discretion" to apply collateral estoppel to issues raised and adjudicated in arbitration when raised in subsequent litigation if "the arbitral proceedings state the issues clearly, and the arbitrators set out and explain their findings in a detailed written memorandum." *Universal Am. Barge Corp. v. J-Chem, Inc.*, 946 F.2d 1131, 1137−1138 (5th Cir. 1991).   The Fifth Circuit set forth the considerations a district court must weigh in determining whether an arbitration ruling is entitled to preclusive effect:

> If the first determination of an issue occurred in an arbitration which afforded litigants **the "basic elements of adjudicatory procedure,"** a district court may find in a proper case that the arbitral award collaterally estops relitigation of the previously determined issues.  . . . The district court specifically must determine **whether procedural opportunities available to the party in the subsequent action "might be likely to cause a different result."**

*Id.* (quoting *Greenblatt v. Drexel Burnham Lambert, Inc.*, 763 F.2d 1352, 1361 (11th Cir. 1985) and *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 332 (1979)) (emphasis added).   Where the party challenging collateral estoppel fails to show "any identified procedural differences between arbitration and district court[,]" then the district court can surmise a lack of prejudice resulting from the application of issue preclusion. *Id.* at 1138.

For example, if, during the arbitration proceeding, the party challenging collateral estoppel (1) was represented by an attorney of their choosing, (2) had access to discovery devices

12

and motion practice, (3) had the ability to lodge objections and call their own witnesses, and (4) received a written, well-reasoned ruling, all of these factors would inevitably demonstrate no appreciable difference in procedure between the arbitrator and a court. *See Tremont LLC v. Halliburton Energy Serv., Inc.*, 696 F. Supp. 2d 741, 824 (S.D. Tex. 2010) ("In the present case, the arbitration proceedings went well beyond the basic elements of adjudicatory procedure.  The proceedings included discovery, motions practice, and live testimony that produced an extensive record and resulted in two written awards detailing the reasons for the arbitrator's decisions.") (internal quotation omitted); *20/20 Commc'ns, Inc. v. Randall Blevins*, No. 4:16-CV-810-Y, 2019 WL 289595, at *10 (N.D. Tex. Jan. 8, 2019) ("The issue was briefed and argued and arbitrators made determinations outlining the rationale for their holdings in a detailed fashion. There are no discernible differences between these determinations and a memorandum opinion and order issued by a federal district court that point to procedural differences between the proceedings.  Since such a dispute-resolution process closely aligns with the Court's own procedural and analytical approach, it is appropriate to apply collateral estoppel in this case.")

Here, the FINRA Arbitration Procedures provide for the nearly identical rule regarding discovery, motion practice, and evidence as in a federal lawsuit.[9]  Furthermore, the evidence clearly shows that during the FINRA arbitration:

(1) Badgerow had access to her own legal counsel (the same attorneys representing her in this action);

---

[9]   *See, e.g.,* FINRA Manual, Code of Arbitration Procedure for Industry Disputes, Rule 13208 (representation by an attorney), available at http://finra.complinet.com/en/display/display_main.html?rbid=2403&element_id=4211; Rules 13503–13504 (motions to dismiss and other motions), available at http://finra.complinet.com /en/display/display_main.html?rbid=2403&element_id=4254; Rules 13506–13514 (discovery requests, objections to discovery, motions to compel, depositions, discovery sanctions, subpoenas, exchange of pre-hearing exhibits and witness lists, etc.), available at http://finra.complinet.com/en/display/display_main.html?rbid=2403& element_id=4257; Rule 13604 (use of evidence at hearing), available at http://finra.complinet.com/en/display/ display_main.html?rbid=2403&element_id=4271 (all pages last accessed Jan. 29, 2019).

255319.2

(2) Prior to the hearing, the parties engaged in extensive written discovery, exchanged over 2,600 pages of documents[10], and took the depositions of Badgerow, Greg Walters and Thomas Meyer;[11]

(3) Badgerow employed an expert, Charles Theriot, who issued a report and testified regarding her purported financial losses resulting from her termination;[12]

(4) there were over 100 documentary exhibits entered into the record at the hearing;[13]

(5) multiple live witnesses were examined during the hearing,[14]

(6) Badgerow's and the respondents' attorneys made objections throughout the hearing;[15]

(7) the parties submitted extensive pre-hearing and post-hearing briefing[16] and

(8) the FINRA Panel ultimately issued a 10-page, thorough and well-reasoned ruling and award.[17]

Badgerow can produce no evidence to dispute that she had access to the same procedural, evidentiary, and substantive legal mechanisms before the FINRA Panel that she would have had if her claims had been brought in court initially.  This Court should thus apply collateral estoppel to the FINRA Panel's decision dismissing Badgerow's Louisiana whistleblower and unfair trade practice claims, and also to its related conclusion that REJ's method of directly paying her

---

[10]  The parties' Responses to Interrogatories and Requests for Production of Documents referenced the documents produced in the FINRA proceeding. *See* R. Doc. 73-7, Ex. M, Badgerow's discovery responses. Badgerow produced documents labeled Badgerow000001–00198 and Badgerow-CapitalOne000001–000320; Respondent WMT produced documents labeled WMTA-000001–001242; Respondent Thomas Meyer produced documents labeled TM000001–000484 and TJM2000001–000057; and Respondent Ameriprise produced documents labeled AFSI/Badgerow0001–0135 and AFSI/Subpoena000001–000216.

[11]  Ex. A, F and G, Cover Pages of Badgerow (taken 7/11/2018), Walters (taken 8/7/2018), and Meyer (taken 8/7/2018) Deposition Transcripts.  These depositions were used in the FINRA hearing on August 27 and 28, 2018.

[12]  *See* **Exhibit H** *in globo*, FINRA Arbitration Witness Examination Index, p. 4.

[13]  *See* **Exhibit I**, FINRA Arbitration Exhibit Index.

[14]  These witnesses included Badgerow, the three Franchise Advisors, Greg Walters, Thomas Meyer, and Ray Trosclair, Marc Cohen (an Ameriprise compliance representative), Michael David Barker (an Ameriprise Franchise Field Vice-President), and Charles Theriot (Badgerow's financial loss expert). *See* Ex. H, FINRA Arbitration Witness Examination Index.

[15]  *See, e.g.,* Ex. E, FINRA Tr. at 25–27; 37–39; 239–242.

[16]  *See* Ex. C, Badgerow Opp. to Resp't Mot. Dismiss; Ex. D, Resp't Reply in Supp. of Mot. Dismiss.

[17]  *See* R. Doc. 68-3, FINRA Panel Ruling.

255319.2

commissions was not in violation of FINRA Rules, any federal financial law or regulation or any state law and that she failed to prove any violation of the Louisiana Whistleblower Statue or the Louisiana Unfair Trade Practices Act. (R. Doc. 68-3, p. 5).

### III.    Badgerow Fails to Plead a Valid Basis to Pierce REJ's Corporate Veil.

As a preliminary matter, Badgerow does not plead that proposed defendant, Trosclair, is an owner or officer of REJ.  That is because he was neither.  There is also no allegation that he participated in hiring, supervising or terminating Badgerow.   In her proposed Amended Complaint, Badgerow alleges that Walters and Meyer were the only owners of REJ. (R. Doc. 68-4, ¶¶ 22–23.)  Thus, his only invitation to this suit are the exact same claims Badgerow asserted against him in the FINRA proceeding.  As such, leave should be denied to relitigate the same FINRA claims against Trosclair.

As to Walters and Meyer, the Eighth and Ninth Causes of Action assert, indirectly, the same claims made against them directly in the FINRA proceeding.  Badgerow should not be granted leave to add the Eighth and Ninth Causes of Action against either of these proposed defendants.

In addition, REJ was, at all relevant times, a viable entity.  It was created on March 20, 1997.[18]  Its initial corporate address was 613 Canal Boulevard in Thibodaux, Louisiana, 70301.[19] REJ owned the land and building at that address.  REJ paid property taxes on that facility to the Parish of Lafourche until the REJ office moved to 132 Rue Collette, Suite A, Thibodaux, Louisiana, 70301 in 2015.[20]  REJ also paid occupational license tax to the City of Thibodaux,[21]

---

[18]   **Exhibit J,** Kylie Kern Declaration ("Kern Decl."), **Exhibits J-1 and J-2,** Amended Articles of Incorporation and By-Laws of REJ Properties, Inc.
[19]   **Exhibit K**, Certified Records from Louisiana Secretary of State, including Initial Report of REJ Properties, Inc.
[20]   **Exhibit J-7**, 2014 Lafourche Parish tax statement in the amount of $242.71.
[21]   **Exhibit J-6**, 2015 Occupational License Renewal.

and it paid for workers' compensation insurance with LWCC.[22]  REJ issued certificates of stock,[23] filed initial reports, submitted forms to the IRS for Sub-S Corporation status,[24] and commenced paying utilities, payroll, payroll taxes, and other taxes for all of its employees.[25]  It filed annual reports with the Louisiana Secretary of State every year through March 20, 2017.[26]  Finally, REJ paid payroll taxes to the State of Louisiana for compensation paid to its employees.[27]  It remained in good standing with the Secretary of State until May of 2018 when the owners of REJ (proposed defendants, Meyer and Walters) elected to dissolve REJ.[28]  However, Badgerow was terminated in July of 2016, so, as stated above, at all relevant times, REJ was a viable and separate entity owned exclusively by Walters and Meyer.

Under the Business Corporation Act, "A shareholder of a corporation is not personally liable for the acts or debts of the corporation." LA. REV. STAT. § 12:1-622(B).  It is well-established that "[a] corporation is a separate entity from its shareholders and a Louisiana limited liability company (LLC) is a separate legal entity from its members." *Fausse Riviere, LLC v. Snyder*, 2016-0633 (La. App. 1 Cir. 2/15/17), 211 So. 3d 1188, 1192.  Moreover, "Louisiana courts are reluctant to hold a shareholder, officer, or director of a corporation personally liable for corporate obligations, in the absence of fraud, malfeasance, or criminal wrongdoing." *Riggins v. Dixie Shoring Co., Inc.*, 590 So. 2d 1164, 1168 (La. 1991) (citing LA. REV. STAT. § 12:93(B), 12:95; *Deroche v. P&L Constr. Materials, Inc.*, 554 So. 2d 717 (La. App. 5 Cir. 1989); *Hemphill-Kunstler-Buhler, Auctioneers and Appraisers v. Davis Wholesale Elec.*, 516 So. 2d 402

---

[22]  **Exhibit J-9,** Bill from LWCC for workers' compensation policy.

[23]  **Exhibit J-3,** Stock certificates.

[24]  **Exhibit J-4,** IRS Form 2553, Election by a Small Business Corporation, dated 3/11/97.

[25]  **Exhibit J-5,** Personal Property Taxes.

[26]  **Exhibit K,** Certified records from the Secretary of State.

[27]  These documents were produced to Badgerow in discovery. REJ Properties, Inc. Employee State Taxes Detail (WMTA-1212–1242).

[28]  **Exhibit K,** May 19, 2018 letter from the Louisiana Secretary of State administratively terminating the Articles of Incorporation due to failure to file an Annual Report.

(La. App. 1 Cir.1987); *Lone Star Indus., Inc. v. American Chem., Inc.*, 461 So. 2d 1063 (La. App. 4 Cir. 1984), *writ denied*, 465 So. 2d 738 (La. 1985), *aff'd*, 480 So. 2d 730 (La. 1986), *aff'd on reh'g*, 491 So. 2d 1333 (La. 1986)).

Courts may only pierce the corporate veil under two exceptional circumstances. *Fausse Riviere, LLC v. Snyder*, 2016-0633 (La. App. 1 Cir. 2/15/17), 211 So. 3d 1188, 1193.  First, where the shareholders, acting through the corporation, commit fraud or deceit on a third party, the court will look to the shareholders for justice. *Id.* Second, the court may disregard the corporate identity where shareholders fail to conduct the business on a corporate footing. *Id*. "Such a failure can occur if the shareholder disregarded the corporate formalities to such an extent that the shareholder and the corporation became indistinguishable, or such unity existed that separate individualities ceased and the corporation was operated as the 'alter ego' of the shareholder." *Doucet*, 694 So. 2d at 308.

To recover under a cause of action in fraud, a plaintiff must prove three elements: (1) a misrepresentation of material fact, (2) made with the intent to deceive, (3) causing justifiable reliance with resultant injury.  *Becnel v. Grodner*, 2007-1041 (La. App. 4 Cir. 4/2/08), 982 So. 2d 891, 894.  Louisiana courts have repeatedly held that fraudulent intent, or the specific intent to deceive, is a necessary and inherent element of fraud, and that fraud cannot be predicated upon mistake or negligence. *Florida Pars. Juvenile Justice Comm'n by & on behalf of the Florida Pars. Juvenile Justice Dist. v. Hannis T. Bourgeois, LLP*, 2016 WL 5402110, 2015-1287 (La. App.. 1 Cir. 9/27/16, 10) (citing *Lomont v. Bennett*, 14-2483 (La. 6/30/15), 172 So. 3d 620, 634; *Charming Charlie, Inc. v. Perkins Rowe Assocs.*, LLC, 11-2254 (La. App. 1 Cir. 7/10/12), 97 So. 3d 595, 599; *Terrebonne Concrete, LLC v. CEC Enters., LLC*, 11-0072 (La. App. 1 Cir. 8/17/11), 76 So. 3d 502, 509, *writ denied*, 11-2021 (La. 11/18/11), 75 So. 3d 464).

Fraud is never presumed, and the burden rests upon the person alleging fraud to prove it by a preponderance of the evidence. *Bass v. Coupel*, 93–1270 (La. App. 1 Cir. 6/23/95), 671 So. 2d 344, 353.  In order to find fraud from silence or suppression of the truth, there must exist a duty to speak or disclose information. *Terrebonne Concrete, LLC v. CEC Enters. LLC*, 2011-0072 (La. App. 1 Cir. 8/17/11), 76 So. 3d 502, 509.  *Automatic Coin Enters., Inc. v. Vend-Tronics, Inc.*, 433 So. 2d 766, 769 (La. 1983), *writ denied*, 440 So. 2d 756 (La. 1983) (referring to the burden of proving fraud as a heaving one).  Badgerow's failure to sufficiently allege fraud, and/or produce evidence supporting a fraud allegation, are fatal to her veil piercing theory of recovery. *See* Fed. R. Civ. P. 9.  In this instance, Badgerow's fraud allegations fall well short of the bar to maintain a cause of action for fraud.  *United States, ex rel. Nunnally v. West Calcasieu Cameron Hosp.*, 519 F. App'x 890, 892 (5th Cir. 2013).

Secondly, Badgerow's claim that REJ was the alter ego of defendants, Walters, Meyer and Trosclair, is baseless, and her motion for leave to amend should be denied to the extent it seeks to pierce the corporate veil.  Factors to be considered when determining whether to apply the alter ego doctrine include, but are not limited to: 1) commingling of corporate and shareholder funds; 2) failure to follow statutory formalities for incorporating and transacting corporate affairs; 3) undercapitalization; 4) failure to provide separate bank accounts and bookkeeping records; and 5) failure to hold regular shareholder and director meetings. Absent fraud, malfeasance, or criminal wrongdoing, courts have been reluctant to hold a shareholder personally liable for corporate obligations. When a party seeks to pierce the corporate veil, the totality of the circumstances is determinative. *Brennan's Inc. v. Colbert*, 2011-1095 (La. App.. 4 Cir. 2/29/12), 85 So. 3d 787, 791.

In the absence of fraud, plaintiffs "bear a heavy burden of proof." *Fina Oil & Chem. Co. v. Amoco Prod. Co.*, 95-1877 (La. App. 1 Cir. 5/10/96), 673 So. 2d 668, 674, *writ denied*, 96-

1446 (La. 9/27/96), 679 So. 2d 1353 (citing *Riggins*, 590 So. 2d at 1168).   Indeed, "[t]he circumstances must be so strong as to clearly indicate that corporation and shareholder operated as one." *Id.* at 674 (citing *Lopez v. TDI Servs., Inc.*, 93-619 (La. App. 3 Cir. 2/2/94); 631 So. 2d 679, 686, *writ denied*, 94-0864 (La. 6/3/94); 637 So. 2d 501; *Cahn Elec. Appliance Co., Inc. v. Harper*, 430 So. 2d 143, 145 (La. App. 2 Cir.1983)).

In her proposed Amended Complaint, Badgerow only makes conclusory allegations without specific information about REJ's structure and functioning.  (*See* R. Doc. 68-4, ¶¶ 27, 28 and 32.)  That is insufficient to pierce the corporate veil.  *Trustees of the Chicago Reg'l Council of Carpenters Pension Fund v. Joyce Bros. Storage & Van Co.*, 15 C 1584, 2016 WL 910504 (N.D. Ill. 2016); and *Shangcheng Dev. LLC v. Norvanta, LLC*, 4:14-CV-164, 2015 WL 11143143 (D.N.D. 2015).[29]

In *Brennan's Inc. v. Colbert*, the Kenyon law firm asserted a reconventional demand against Brennan's Inc. seeking unpaid legal fees and costs. *Brennan's Inc. v. Colbert*, 2011-1095 (La. App. 4 Cir. 2/29/12), 85 So. 3d 787. In addition to naming Brennan's Inc. as defendants-in-reconvention, the Kenyon firm named each of the Brennan brothers individually, as shareholders of the corporation. The Kenyon firm argued that when it demanded payment of its bills, the Brennan brothers explicitly promised they would pay all bills and identified specific funds that would be used. The firm stated that it was undisputed that the promises were made by the brothers for the purpose of inducing additional legal services. The court disagreed:

> The supporting evidence submitted by the Kenyon firm does not prove that any one of the Brennan brothers agreed to personally pay the debt to the Kenyon firm. Rather, the testimony indicates that each brother was speaking on behalf of the corporation. In the Kenyon firms' own brief, it admits that the

---

[29]  Furthermore, Badgerow's veil-piercing allegations are premature at this stage.  As recognized by the Middle District of Louisiana, citing Louisiana jurisprudence, such allegations are used not to *create* liability, as Badgerow contends, but rather to *extend* liability once it has been established against a person or entity in order to satisfy an obligation. *Central Facilities Oper. Co., LLC v. Cinemark USA, Inc.*, 36 F. Supp. 3d 700, 705 n.4 (M.D. La. 2014) (citing *Green v. Champion Ins. Co.*, 577 So. 2d 249, 257 (La. App. 1 Cir. 1991).

> operation of Brennan's, Inc., was lacking in formality, with no formal
> meetings held, agendas prepared or minutes taken. Brennan's, Inc., is a small,
> family corporation … The client was Brennan's, Inc., bills were sent to
> Brennan's, Inc., and payments were paid with checks from the Brennan's,
> Inc., bank accounts. Evidence attached to the Kenyon's firms own motion
> indicate [sic] that Brennan's, Inc., maintained its own accounting records and
> filed its own tax returns … The Kenyon firm admits that there is no
> requirement for small, closely-held corporations to operate with the formality
> usually expected of larger corporations.

Critically, the court pointed out "Brennan's, Inc., at all times since its inception has maintained corporate books, corporate bank accounts, and has filed corporate tax returns." As such, it held "[t]he Kenyon firm has failed to establish that the lack of corporate formalities, particularly, meetings, agendas and minutes, is sufficient to pierce the corporation veil." All of that, and more, is present here. Indeed, Badgerow inconsistently alleges REJ handled payroll, payroll taxes, etc., which are viable corporate purposes independent of REJ's owners, Walters and Meyer. (R. Doc. 68-4, ¶¶ 20-21).[30]

Badgerow, in several places in her proposed Amended Complaint, suggests that Walters, Meyer, Trosclair & Associates ("WMT"), as a trade name, creates a separate entity apart from REJ. Pretermitting the issue that she has not alleged sufficient facts to support the concept that WMT is a partnership or even a joint venture, case law provides that mere use of a "d/b/a" is not sufficient to create an entity against which a judgment can be rendered. *Trombley v. Allstate Insurance Co.*, 640 So. 2d 815, 917 (La. App. 3 Cir. 1994), citing *Guidry v. City of Houma*, 471 So. 2d 1056 (La. App. 1 Cir. 1985); *Leonardi v. Dress Rack*, 444 So. 2d 780 (La. App. 4 Cir. 1984). The designation "dba" simply means "doing business as," but is merely descriptive of the person or corporation who does business under some other name. Doing business under another name does not create an entity distinct from the person or corporation operating the business.

---

[30] The evidence is clear that REJ paid Badgerow <u>and</u> other staff and AFAs. (R. Doc. 73-1, p. 4.)

*Melder v. State Farm Mut. Auto. Ins. Co.*, 162 So. 3d 438, 444 (La. App. 3 Cir. 2015, *writ denied*, 178 So. 3d 569 (La. 2015).[31]

REJ acted independently as a business owning property, paying property tax, paying income tax, paying payroll tax, issuing W-2s, filing appropriate documents with the Secretary of State on an annual basis, maintaining separate books and records and bank accounts, etc.  There is no reason herein to pierce the corporate veil, and the use of a "dba" (Walters, Meyer, Trosclair & Associates) does nothing to change that simple fact.

**IV.   Badgerow's "New" Claims Are Untimely and/or Do Not Relate Back to the Original Complaint, and Therefore Amendment Would Be Futile.**

**A.   LWPA and LUTPA Claims are Time Barred.**

Even if collateral estoppel does not apply to Badgerow's proposed LWPA and LUTPA claims, her proposed amendment would still be inappropriate and, ultimately, fruitless, since these claims do not relate back to her original Complaint under Fed. R. Civ. P. 15(c), and even if they did, would still be facially untimely pursuant to the applicable Louisiana prescriptive/peremptive periods.

Federal Rule 15(a) applies a presumption in favor of granting leave to amend pleadings absent a substantial reason to the contrary, such as where the proposed amendment would not cure identified deficiencies in the complaint and would thus be futile.[32] *Landavazo v. Toro Co.*, 301 F. App'x. 333, 337 (5th Cir. 2008); *Macklin-Ducre ex rel. Macklin v. Rental Serv. Corp.*, No. Civ.A 03-3559, 2005 WL 711594, at *1 (E.D. La. Mar. 15, 2005) (Zainey, J.) ("[T]he liberal amendment policies embodied in [Rule] 15(a) does not require that courts indulge in futile gestures.  As such, where a complaint, as amended, would be subject to dismissal, leave to

---

[31] The evidence submitted in support of REJ's pending Motion for Summary Judgment, addressed to Plaintiff's original Complaint, explains that WMT was a branding name recognized by Ameriprise. (R. Doc. 73-1, p. 4; 73-4 (Ex. A, Walters Decl. ¶ 4); 73-7 (Ex. K, Meyer Decl. ¶ 2).

[32] Other substantial reasons to deny leave to amend include undue delay, bad faith, dilatory motive, or prejudice to the opposing party. *Macklin-Ducre*, 2005 WL 711594, at *1.

amend need not be granted.") (internal citations omitted).[33]  Here, Badgerow's proposed LWPA and LUTPA claims are untimely on their face and thus would not survive a Rule 12(b)(6) motion to dismiss.

Under Fed. R. Civ. P. 16, after the time provided under a scheduling order to amend pleadings has passed, further amendment shall not be allowed except upon a showing of good cause.  The "good cause" determination requires examination of four factors: (1) the explanation for the failure to timely move for leave to amend; (2) the importance of the amendment; (3) potential prejudice in allowing the amendment; and (4) the availability of a continuance to cure such prejudice." *S.W. Bell. Tel. Co. v. City of El Paso*, 346 F.3d 541, 546 (5th Cir. 2003) (citation and quotation omitted).   Here, the Court's original Scheduling Order stated that "[a]mendments to pleadings . . . shall be filed no later than December 29, 2017, in accordance with the Federal Rules of Civil Procedure and Local Rule 7.6." (R. Doc. 24)  The Court has not re-opened the pleadings or otherwise lifted this deadline, and therefore Badgerow must establish good cause for her amendment without any presumptions made in her favor.

A whistleblower claim pursuant to the LWPA is subject to a one-year prescriptive period under Louisiana law. *Williams v. Otis Elevator Co.*, 557 F. App'x. 299, 302 (5th Cir. 2014) (holding that because the LWPA contains no specific prescriptive period, but is delictual in nature, it is subject to the general one-year prescriptive period of La. Civ. Code art. 3492).  It is

---

[33]   While not essential to this Opposition, there is a further ground for the futility of adding a whistleblower claim, as several Louisiana courts have held that § 967's definition of "employer" conforms to the definition under the Louisiana Employment Discrimination Law, LA. REV. STAT. § 23:302, requiring that the employer have 20 or more employees during the relevant time period.  *See Langley v. Pinkerton's Inc.*, 220 F. Supp. 2d 575, 579–80 (M.D. La. 2002); *Ray v. City of Bossier City*, 37,708 (La. App. 2 Cir. 10/24/03), 859 So. 2d 264, 272, *writ denied*, 2003–3254 (La. 2/13/04), 867 So. 2d 697, and *writ denied*, 2003–3214 (La. 2/13/04), 867 So. 2d 697).  As addressed in REJ's Motion for Summary Judgment, it never employed 20 or more employees at any point during Badgerow's employment. (R. Doc. 73-1, pp. 10-11; 73-4 (Ex. G, ¶10).)  Thus, not only would a claim be untimely under §967, but it would also be subject to dismissal as the threshold requirement of 20 or more employees is not met for REJ to be a covered employer.  Finally, case law provides that a claim under § 967 cannot stand against individual supervisors or business owners who do not meet the state-law definition of "employer." *Perry v. Kim's Mkt. & Deli, LLC*, No. CIV.A. 07-0594, 2008 WL 199810, at *1 (E.D. La. Jan. 23, 2008) (citing *Jones v. JCC Holding Co.,* No. Civ.A. 01-0573, 2001 WL 537001, at *3 (E.D. La. May 21, 2001)).

also well established that the filing of an EEOC Charge does not interrupt or suspend the tolling of the one-year prescriptive period for LWPA claims. *Hunter v. Jefferson Par. Pub. Sch. Sys.*, No. 17-2015, 2017 WL 2910992, at *6 (E.D. La. July 7, 2017) (Wilkinson, J.).  As this Court held in the *Hunter* case, the one-year period runs from the day the retaliatory act forming the basis of the whistleblower claim occurred, which can be no later than the last date of the plaintiff's employment unless there is an allegation of post-termination retaliatory action. *Id.* Here, there is no allegation presented in the original Complaint or Amended Complaint that Badgerow was subject to any retaliatory action after her termination from REJ in response to her reporting of alleged violations.  Thus, the one year period ran from her date of termination, July 26, 2016, and is time barred as her original Complaint was not filed until September 22, 2017, more than 1 year after her termination.

Similarly, Badgerow's LUTPA claim is subject to a one-year peremptive period running from the last date the alleged unfair trade practice occurred. LA. REV. STAT. § 51:1409(E) (providing that a private action "shall be prescribed by one year running from the time of the transaction or act which gave rise to the right of action."); *Tubos de Acero de Mexico, S.A. v. Am. Int'l Inv. Corp.*, 292 F.3d 471, 481 (5th Cir. 2002) (holding that § 1409(E)'s one-year period is peremptive rather than prescriptive, and thus is not subject to suspension, interruption, renunciation, or the Louisiana law principle of *contra non valentem*) (citing *State Through Div. of Admin. v. McInnis Bros. Const.*, 97-0742 (La. 10/21/97), 701 So. 2d 937, 939.  Like her LWPA claim, the peremptive period for Badgerow to bring a LUTPA claim started no later than when her employment with REJ ended on July 26, 2016

Here, the prescriptive and preemptive periods on Badgerow's LWPA and LUTPA claims, respectively, ran from, at the latest, the date she was terminated from REJ, which was July 26, 2016.  The instant suit was not filed until September 22, 2017, approximately 14 months later,

and so these proposed claims (which were not alleged until January 2019 via the proposed Amended Complaint) are untimely on their face, regardless of whether relation-back principles under Fed. R. Civ. P. 15(c) apply. These claims should therefore not be allowed against REJ or against Walters, Meyer or Trosclair individually as they will be dismissed with prejudice as untimely.

### B. Badgerow's LWPA and LUTPA Claims Do Not Relate Back.

Further, Badgerow's newly-asserted claims under the LWPA or LUTPA do not relate back to her original Complaint under the standard prescribed by the Federal Rules, that "the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading." Fed. R. Civ. P. 15(c)(1)(B). Rather, these claims rest on completely new fact allegations that have no resemblance to the claims in the original Complaint. Since these claims are untimely under state law and thus subject to dismissal under Rule 12, permitting an amendment to add these claims would be futile. Moreover, Badgerow obviously knew of these claims previously, as evidenced by the fact that she brought them before FINRA in August 2016.

The Court need only compare the Complaint and Amended Complaint to see that the pleadings do not contain mutual allegations setting forth the same or similar "conduct, transaction, or occurrence" related to her whistleblower and unfair trade practice claims. In the proposed Amended Complaint, Badgerow has inserted 30 new paragraphs into her "Allegations" section (¶¶ 17–43 and 78–80) in order to prop up the newly-added LWPA and LUTPA claims related to REJ's alleged failure to register as a broker-dealer in violation of FINRA Rules and SEC laws and regulations, her alleged reporting of this "violation" to Marc Cohen, and her spurious claims against Walters, Meyer and Trosclair personally vis-à-vis piercing the corporate veil of REJ. In her original Complaint, there was no factual predicate whatsoever for the failure

to register as a broker-dealer, no mention that she reported this as a violation of law to Marc Cohen, and certainly no allegations related to REJ being a shell corporation or "alter ego" of the practice group, WMT.

Because Badgerow's state-law whistleblower and unfair trade practice claims are prescribed or perempted and further because they lack any basis for relation back under Rule 15(c), amendment here would be futile and should be denied.

## V.   **Badgerow Cannot Establish Good Cause for Her Excessive Delay in Bringing New Whistleblower, Unfair Trade Practices, and Breach of Contract Claims.**

### A.   *Badgerow was aware of the potential LWPA and LUTPA claims in 2016 when she was terminated and alleged these same claims in the FINRA proceeding.*

Whether this Court examines Badgerow's request for leave to amend under Rule 15(a) and Rule 16(b), she fails to meet the standard of demonstrating that amendment is proper.  As discussed above, Badgerow's Amended Complaint includes 30 new paragraphs regarding (1) REJ's alleged violation of FINRA Rules and Federal laws and regulations by directly paying her commissions without REJ first registering as a broker-dealer; (2) her alleged reporting of these purported violations to an Ameriprise compliance officer in July 2016; and (3) REJ's corporate structure as an alleged "alter ego" of the practice group, WMT. (R. Doc. 68-4, ¶¶ 17–43, 78–80.) The sole purpose behind these additions is to lay the groundwork for her newly-added LWPA and LUTPA claims—which claims she already litigated in FINRA and lost as to Walters, Meyer and Trosclair—and her individual liability allegations against Walters, Meyer and Trosclair under a tortured piercing-the-corporate-veil theory.

In an attempt to justify these new allegations in the Amended Complaint, Badgerow states that "[t]he newly alleged facts were entirely unknown at the time Plaintiffs filed their original complaint" and that "[w]ith regard to adding the [LUTPA] and [LWPA] claims against REJ Properties, Inc., the Plaintiff believed that her causes of action against REJ Properties, Inc.

would be able to be addressed in the FINRA Arbitration proceeding, but the panel declined to opine on the actions of REJ Properties and never had before it a piercing the corporate veil theory." (R. Doc. 68-2, p.5.)   In other words, Badgerow is arguing two contradictory points: first, that she wasn't aware of the facts underlying the new causes of action when she filed her Complaint in September 2017, and second, that she knew about her LWPA and LUTPA claims when she brought her FINRA Complaint in August 2016, but believed that they should be resolved through the arbitration and not through a court.   These arguments are confounding at best, and brazenly misleading at worst.

There are no "newly-discovered facts" that contribute to Badgerow's whistleblower or unfair trade practice claims.   Badgerow alleges in the proposed Amended Complaint that she reported to Marc Cohen in July 2016 that "she was not being paid compliantly"; and that she was terminated in July 2016. (R. Doc. 68-4, ¶¶ 78, 82.) Rather, as she seems to admit in her Motion for Leave, the decision to add the LWPA and LUTPA claims to this suit was triggered solely by the fact that the FINRA Panel rejected and dismissed them.   Badgerow chose to bring the LWPA and LUTPA claims in FINRA against the individuals Walters, Meyer and Trosclair and well knew that REJ could not be part of the FINRA proceeding, as FINRA has no jurisdiction over REJ, a non-registered entity.   In her Motion for Leave, Badgerow inaccurately states that the FINRA Panel "declined to opine" on the LWPA and LUTPA claims as to REJ, conveniently omitting the fact that the arbitrators did opine that Badgerow "did not:  1) establish liability for the Individual Respondents [Walters, Meyer, and Trosclair] under the [LWPA]; . . .  and 3) prove any claim against the Individual Respondents under [LUTPA] or establish any other basis for recovery under the Amended and Restated Statement of Claim." (R. Doc. 68-3, p. 5.)

Since the FINRA Panel concluded that there was no liability for Walters, Meyer or Trosclair under the LWPA or LUTPA, then it is axiomatic that there can be no liability under

those statutes against REJ or against Walters, Meyer or Trosclair individually under a veil-piercing theory. Adding them as individual defendants at this late stage of litigation would be unduly prejudicial and procedurally inappropriate, since Badgerow has provided no excuse for her failure to pursue individual claims, if she saw a basis for doing so, when the lawsuit was filed. *See Friede & Goldman, Ltd. v. Gotaverken Arendal, AB*, No. CIV.A 00-209, 2002 WL 1837846, at *1 (E.D. La. Aug. 9, 2002) (Zainey, J.) (denying leave to amend under Rule 15 where party sought to add individual claims against two corporate officers without explanation after litigation had been pending for several years).

Badgerow's blatant attempt to relitigate issues already decided definitively by the FINRA Panel is misguided, vexatious, and seems designed to needlessly prolong this litigation and increase costs. Under the Scheduling Order in this case, discovery was closed on September 11, 2018 and the matter was set for trial on November 5, 2018. (R. Doc. 24.) On August 30, 2018, the Court continued the trial at the parties' request pending the FINRA Arbitration and a private mediation. (R. Doc. 62.) It was only after the FINRA Panel issued its decision on December 28, 2018, dismissing Badgerow's LWPA and LUTPA claims that she sought to add those same causes of action to this suit. It is simply too late and her request for leave is baseless. The unfair prejudice that the amendment would cause to REJ and the proposed individual defendants is self-evident. *See United States ex rel. Gray v. Lockheed Martin Corp.*, No. 05-4201, 2008 WL 11353746, at *2 (E.D. La. June 16, 2008) (Wilkinson, J.) (denying leave to amend after the close of pleadings, where discovery and trial preparation had proceeded for 13 months before the plaintiff sought to add an additional claim, which would have substantially prejudiced the defendant by requiring it to take additional discovery and prepare dispositive motions on the newly-revealed cause of action.)

27

Further, there is a distinct air of bad faith in Badgerow's attempt to pursue individual liability against Walters, Meyer and Trosclair, given what can only be assumed as her dissatisfaction with the recent FINRA dismissal of identical claims against these same three individuals.  There has not been any discovery conducted in this case for nearly six months, so it is entirely unclear what she means by claiming that "[u]ncovering the Defendant's unlawful business structure required significant discovery which has now been completed."  (R. Doc. 68-2, p. 5.)  Walters and Meyer were both deposed by Badgerow's counsel on August 7, 2018. *See* Exs. F and G.  She has offered no explanation of why, if there was a basis for individual liability against either of them, she could not have brought this claim after taking their depositions. *See Lavigne v. La. Dep't of Justice*, CV 06-3942, 2010 WL 11538226, at *2 (M.D. La. Oct. 6, 2010) (holding the explanation for the three-month delay in moving to amend was inadequate where the plaintiff did not promptly file the amendment after the deposition of the party wherein the allegedly new information arose.)  This belated veil-piercing argument is nothing more than a smokescreen obscuring issues and claims fully tried and resolved through the FINRA arbitration, as well as a calculated end-run around the prohibitions on individual supervisor liability under federal and state anti-discrimination statutes.

### B. Badgerow had every opportunity to bring her additional contract claim when she filed this suit but failed to do so.

Like her LWPA and LUTPA claims, Badgerow cannot point to any new development or information that prompted her additional proposed breach of contract claim that Walters promised to pay 70% of her commissions as an independent contractor. (R. Doc. 68-4, ¶¶ 75, 76, 123.)  There was no such contract, since from day one, in every pleading and in her deposition testimony, she referred to this merely as a "proposal" put forth by Walters to cure the

28

turmoil in the office that she was creating, but which never came to fruition. Ex. A, Badgerow Depo. at 227:9–16; Ex. E, Aug. 27, 2018 FINRA Tr. at 189:24–192:10; R. Doc. 68-4, ¶ 75.

Furthermore, Badgerow was undoubtedly aware of any alleged facts surrounding this claim at the time of her original Complaint, yet for whatever reason failed to plead or mention it. The supporting "facts" pertaining to her purported agreement with Walters were all well known to her when she was still an REJ employee in mid-2016.  She alleges in the proposed Amended Complaint that she met with Greg Walters about the independent contractor proposal in <u>May 2016</u>. (R. Doc. 68-4, ¶¶ 75–76.)  So she was well aware of these facts before and at the time of her termination, yet failed to allege them in her original Complaint in September 2017, instead waiting over two-and-a-half years, until January 2019, to try to shoehorn them into this suit through the proposed Amended Complaint.  There is absolutely no good reason, other than a tactical one, as to why these claims were not brought in the original Complaint.  This is an obvious case of undue delay, dilatory motive and bad faith by Badgerow, and palpably unfair prejudice to REJ, that should not be allowed by the Court.

**VI.** **<u>Conclusion.</u>**

For the foregoing reasons, REJ Properties, Inc. d/b/a Walters, Meyer, Trosclair & Associates respectfully requests that this Court deny Plaintiff's Motion for Leave to File First Amended and Supplemental Complaint.

255319.2

Respectfully submitted:

**BREAZEALE, SACHSE & WILSON, L.L.P.**

By:   */s/ Eve B. Masinter*
E. FREDRICK PREIS, JR. (LA BAR #10704)
EVE B. MASINTER (LA BAR #1218), T.A.
CLAUDE F. REYNAUD, JR. (LA BAR #11197)
MATTHEW M. MCCLUER (LA BAR #33970)
First Bank & Trust Tower, Suite 1500
909 Poydras Street
New Orleans, LA 70112-4004
Telephone: (504) 619-1800
Fax: (504) 617-7928
Email: Fred.Preis@bswllp.com
Email: Eve.Masinter@bswllp.com
Email: Claude.Reynaud@bswllp.com
Email: Matthew.McCluer@bswllp.com
*Attorneys for REJ Properties, Inc. d/b/a Walters,*
*Meyer, Trosclair & Associates*

## CERTIFICATE OF SERVICE

I hereby certify that on January 29, 2019, I filed the foregoing *Opposition to Plaintiff's Motion for Leave to File First Amended and Supplemental Complaint* electronically with the Clerk of Court using the CM/ECF system, which will provide notice of the filing to all counsel of record.

*/s/ Eve B. Masinter*
Eve B. Masinter

255319.2