IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| **DENISE A. BADGEROW,** | * | **CIVIL ACTION NO. 2:17-cv-09492** |
| on behalf of herself and a class of those | * | |
| similarly situated, | * | **JUDGE JAY C. ZAINEY** |
|      **Plaintiffs,** | * | |
| v. | * | **MAG. DONNA PHILLIPS CURRAULT** |
| | * | |
| **REJ PROPERTIES, INC. D/B/A** | * | |
| **WALTERS MEYER TROSCLAIR &** | * | |
| **ASSOCIATES, AND AMERIPRISE** | * | |
| **FINANCIAL SERVICES, INC.,** | * | |
|      **Defendants** | * | |
| | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

## MEMORANDUM IN SUPPORT OF MOTION TO ENFORCE JUDGMENT FOR COSTS AND MOTION FOR CONTEMPT AND SANCTIONS

Defendant, REJ Properties, Inc. d/b/a Walters Meyer Trosclair & Associates ("WMT") asks this Court to enforce the final Judgment with incorporated Bill of Costs entered against Plaintiff, Denise Badgerow, on August 8, 2019 in the amount of $10,210.55 (R. Doc. 187), and to further assess post-judgment interest from the date of the Final Judgment on the Motion for Summary Judgment, dated June 3, 2019. Further, in light of Plaintiff's blatant disregard of a final Judgment and a certified Bill of Costs issued by this Court and affirmed in all relevant respects by the U.S. Fifth Circuit Court of Appeals, and the purposeful delay tactics and attempts to avoid payment of costs awarded WMT as evidenced by the communications attached hereto, WMT asks this Court to hold Plaintiff and her counsel in contempt of Court pursuant to 18 U.S.C § 401 and this Court's inherent sanction authority, and to impose against them WMT's reasonable attorney's fees incurred in preparing and pursuing this Motion in an amount to be determined by the Court. WMT further asks this Court to consider other reasonable sanctions and relief for

Plaintiff and her counsel's delay and bait-and-switch tactics all in avoidance of satisfying the cost award—a debt that is no doubt past due and owing.

## I. BACKGROUND

### A. This Court assessed costs against Plaintiff in its June 3, 2019 Judgment.

This Court issued its Order and Reasons on May 29, 2019, granting summary judgment to WMT on all of Badgerow's claims. The Court then entered its final Judgment of dismissal with prejudice on June 3, 2019 (R. Doc. 160). On June 17, within the 14-day time period provided by Fed. R. Civ. P. 54(d)(2)(B)(i), WMT timely moved for taxation of $10,250.55 in costs, including filing a Memorandum in Support of the Motion, a Notice of Submission, and the itemized Bill of Costs required under Eastern District Local Rule 54.3. (R. Doc. 165.) The Motion for Taxation of Costs ("Motion for Costs") was noticed for submission to this Court on July 10, 2019. Badgerow filed no opposition to the Motion for Taxation of Costs. On August 8, 2019, the Clerk of Court for the Eastern District approved the unopposed Bill of Costs, reduced the costs taxed to $10,210.55, and filed the certified Bill of Costs into the record. (R. Doc. 187.)

### B. Plaintiff did not object to the Bill of Costs or properly appeal the cost assessment to the Fifth Circuit, and thus waived any argument against costs.

After the Bill of Costs was approved and filed into the record on August 8, 2019, pursuant to Fed. R. Civ. P. 54(d)(1), Badgerow had seven days to move this Court to review the Bill of Costs, placing her deadline to file such motion on August 15, 2019. Badgerow filed no such motion, and thus never contested the Bill of Costs with this Court. Yet, when Badgerow filed her Notice of Appeal to the Fifth Circuit on August 22, 2019, seeking review of this Court's June 3, 2019 Judgment dismissing her claims with prejudice, she also filed a second Notice of

Appeal as to the assessment of $10,210.55 in costs against her. The two appeals were then consolidated by the Fifth Circuit.

As more fully briefed below, Plaintiff's failure to challenge the Bill of Costs awarded at the district court level actually precluded her ability to challenge it in the Fifth Circuit. However, since she never briefed the cost issue, the failure to follow this procedural prerequisite did not need to be addressed in the Fifth Circuit. Moreover, Badgerow never included in her briefing to the Fifth Circuit <u>any</u> discussion of the award of costs or any argument as to why that award should be reduced, modified, or reversed, so her appeal of the costs issue, even if it had been procedurally valid, was waived. *See Badgerow v. REJ Properties, Inc.*, 974 F.3d 610, 616 n.5 (5th Cir. 2020) (citing *In re HECI Exploration Co., Inc.*, 862 F.2d 513, 525 (5th Cir. 1988)) ("Although Badgerow filed a second notice of appeal with respect to the district court's assessment of costs against her, Badgerow's appellate briefs make no specific argument about the assessment of costs. We decline to address an issue listed in the notice of appeal but not argued."). As such, the Bill of Costs was neither opposed nor contested at any level.

  **C. The Fifth Circuit affirmed this Court's Judgment in all respects except for the Title VII retaliation claim, thus confirming the award of costs in WMT's favor.**

On September 11, 2020, the Fifth Circuit panel issued its Opinion affirming in part, and reversing in part, this Court's Judgment of dismissal. *Badgerow*, 974 F.3d at 622. The Fifth Circuit affirmed the dismissal of all of Plaintiff's claims except for her Title VII retaliation claim, which it remanded for further proceedings. *Id.* The Fifth Circuit then stated that "[i]n all other aspects, the judgment of the district court is affirmed." *Id.* As mentioned above, the Fifth Circuit specifically noted in its Opinion that Badgerow had failed to argue the issue of costs in her brief and, thus, it could not address an issue not briefed on appeal. *Id.* at 616, n.5. Therefore, in addition to Badgerow's failure to oppose the Motion for Costs and then seek review of the

certified Bill of Costs in this Court, she further waived any appeal of the assessment of costs against her by failing to brief the issue in her appeal brief.

### D. Plaintiff's counsel has repeatedly attempted to evade payment of costs through delay tactics and misrepresentations of fact and law.

Since August 2019, WMT's counsel has made several formal requests to Plaintiff's counsel to pay the costs assessed by this Court, including three requests after the Fifth Circuit issued its Opinion that affirmed this Court's Judgment in all respects except for the retaliation claim, which included affirming the certified Bill of Costs. *See* **Exhibit 1**, Letter dated Aug. 21, 2019; **Exhibit 2** Letter dated Oct. 23, 2020; **Exhibit 3**, Letter dated Nov. 9, 2020; **Exhibit 4**, Letter dated Nov. 30, 2020.  On November 9, 2020, Plaintiff's counsel responded that she and her client refused to pay the costs to WMT because this Court's Judgment of dismissal was partially reversed by the Fifth Circuit and she believed her client would be successful at trial and would be entitled to costs. *See* **Exhibit 5**, Email dated Nov. 30, 2020.

During the Status Conference with the Court conducted on December 3, 2020, the undersigned brought up the issue of the unpaid costs and Plaintiff's counsel indicated that Plaintiff was willing to pay the costs if she was required to, but stated that she did not think she had to based on some unspecified legal authority. The undersigned cited the affirmation of the cost award by the Fifth Circuit. This Court then indicated that any motion as to the enforcement of the cost award was to be filed by December 31, 2020. (R. Doc. 211.) Despite several requests, Plaintiff's counsel has never produced to the undersigned any of the supposed authority supporting her varied positions. Plaintiff's assertion that the Fifth Circuit's partial reversal somehow voids this Court's cost award is directly refuted by the *Eastman Kodak* and *Miraglia* decisions from the Fifth Circuit cited and discussed *infra*.

On December 9, 2020, Plaintiff's counsel sent an e-mail proposing to put the funds in an interest-bearing account and make them payable to the party that prevailed at trial, or alternatively to pay the funds to WMT and enter into an agreement that the funds would be immediately discharged and returned to Plaintiff if she was successful on her claims at trial. *See* **Exhibit 6**, p. 4, Email dated Dec. 9, 2020. The undersigned responded that those proposals were not sufficient since WMT was entitled to immediate payment of the costs awarded to it and due by law. After a series of communications regarding the payment of costs, Plaintiff's counsel finally agreed to pay them: "We will just pay it, and get it back when we win. Please forward me wire instructions for payment." *See* Ex. 6, p. 2, Email dated Dec. 9, 2020. The instructions for payment to the undersigned's firm trust account were then sent to Plaintiff's counsel twice. *See* **Exhibit 7**, pp. 4, 9, Emails dated Dec. 9, 2020 and Dec. 17, 2020. Further, when WMT's counsel briefly asked Plaintiff's counsel to await confirmation of whether the payment should be made by check or wire payment, Plaintiff's counsel responded "Ok – no problem, let me know." *See* Exhibit 6, p. 1, Email dated Dec. 9, 2020. There was never any indication in this exchange that Plaintiff's counsel did not intend to go through with the payment as she agreed. However, Plaintiff's counsel failed to make payment for nearly a week after again agreeing to do so on December 9, 2020.

On December 15th, counsel for WMT asked for an update on the status of the payment, and Plaintiff's counsel responded: "<u>We can wire the process [sic] to the individuals. We will need to cut a check to REJ. I'm waiting on funds before I can forward.</u>"[1] *See* Ex. 7 pp. 6-7, Email dated Dec. 15, 2020 (emphasis added). Finding the email response a bit obtuse, WMT's counsel

---

[1] Not only did Plaintiff agree to wire funds to the undersigned's trust account on more than one occasion, but she agreed in this December 15th correspondence to wire the funds to the bank accounts for the individuals (the owners of REJ Properties, Inc., Greg Walters and Thomas Meyer). After agreeing to wire payment to Walters and Meyer, Plaintiff's counsel then refused to do so.

sent several additional emails asking for clarification as to how and when Plaintiff's counsel intended to make the payment, again requesting that the funds be wired to its firm trust account. *See* Ex. 7 pp. 1-5, Emails dated Dec. 15, 2020 and Dec. 17, 2020.  Despite the confusion, Plaintiff's counsel nevertheless indicated that payment was imminent by the statement that she was awaiting funding before making payment. When Plaintiff's counsel did not further respond, counsel for WMT determined that they should call her to discuss. Plaintiff's counsel did not return several attempts to reach her by phone.

Then, WMT's counsel attempted to resume email discussion with Plaintiff's counsel. Her response was that she must obtain a Form W-9 for payment to REJ Properties, Inc., despite several clarifications from WMT's counsel that the payment was to be wired to the law firm for WMT's counsel as previously discussed. *See* Ex. 7, pp. 3-5, Emails dated Dec. 15, 2020 and Dec. 17, 2020.  Plaintiff's counsel responded that she was required to send a paper check and requested an EIN or W-9 so the check could be issued. The undersigned, now believing that Plaintiff's counsel would issue a check to the undersigned's firm, sent her the firm's EIN and W-9 Form and asked that the check be written to the firm and hand delivered or sent via Federal Express. Plaintiff's counsel then responded that she was issuing the check to REJ Properties, Inc. and needed its EIN or W-9.

After insisting that she would now only issue a paper check to REJ Properties, Inc. and would not wire the funds or issue a paper check to WMT's counsel's firm as she had previously agreed to do, WMT's counsel stated the obvious fact, known to Plaintiff's counsel, that REJ Properties, Inc. was no longer an active business entity and a check in its name could not be negotiated and again instructed that payment be sent to counsel for WMT's firm trust account. *See* Ex. 7 p. 1, Email dated Dec. 17, 2020.  At that point, WMT's counsel noted that if the delay

tactics continued, they would bring the issue to the Court's attention. Plaintiff's counsel's response via email was that she would need to further consider the issue, and if the undersigned wanted to get the Court involved that was fine because she would like the Court to understand the issue. *See* Ex. 7, p. 1, Email dated Dec. 17, 2020. The undersigned responded that they did not know what the "issue" was since the check could simply be written to their firm, and requested Plaintiff's counsel's cell phone number since calls to her office had not been returned. *See* Ex. 7, p. 1, Email dated Dec. 17, 2020. There was no response.

Seeing that no progress was being made in their attempts to reason with Plaintiff's counsel, WMT's counsel then called Plaintiff's counsel on December 17, 2020 using a cell phone number they located. During that call, Plaintiff's counsel was combative and continued in her pattern of creating excuses regarding why Plaintiff should not or could not be required to pay the cost award. She claimed that payment of costs to REJ Properties, Inc. would be improper given the fact that the company was dissolved by its two owners, Greg Walters and Thomas Meyer, several years ago, and that this raised an issue of whether she would be able to collect any judgment in her client's favor against REJ Properties, Inc., which she falsely labeled a "defunct entity." WMT's counsel stated there was absolutely no legal basis for Plaintiff to withhold payment of the costs on that basis, that recovery on a hypothetical future judgment was not relevant to the issue at hand, and that Plaintiff's counsel was effectively holding the funds "hostage" until her retaliation claim was tried.[2] Again, WMT's counsel referenced the alternative payment arrangements it had previously suggested of wiring payment directly to the individuals or to their firm trust account, both of which Plaintiff had agreed to do. Plaintiff's counsel tellingly responded: "Well I don't want to pay it and I don't think I have to pay it."

---

[2] The undersigned explained to Plaintiff's counsel that even if Plaintiff were to prevail, recovery of her costs was a separate issue for another day and was speculative.

WMT's counsel stated that they would be forced to pursue motion practice in light of her repeated failures and refusal to pay the costs awarded and owed by law. Plaintiff's counsel sarcastically responded "That sounds good. Thank you."

## II. LAW AND ARGUMENT

At various points throughout the written and verbal exchanges between counsel for WMT and Plaintiff summarized above and set out in the emails, Plaintiff's counsel has offered a myriad of excuses for non-payment of the final, affirmed cost award, including that: (1) costs are not owed because Plaintiff's appeal was "successful"; (2) costs are not appropriate because she believes Plaintiff will recover her costs when a verdict is rendered in her favor at trial; (3) the Fifth Circuit awarded Plaintiff appeal costs[3]; (4) Plaintiff's counsel was waiting on funds before she could issue payment; and (5) Plaintiff cannot pay the costs because REJ Properties, Inc. is no longer an active corporate entity. None of these are acceptable reasons to refuse payment of a final, unopposed, confirmed cost award to the prevailing party, WMT.

### A. The Bill of Costs is a final, unappealable Judgment of this Court.

The Bill of Costs entered by this Court on August 8, 2019 made $10,210.55 in costs a part of the Final Judgment entered against Plaintiff on June 3, 2019 (R. Doc. 187). Plaintiff failed to challenge these awarded costs multiple times.

First, Plaintiff failed to oppose the Motion to Tax Costs filed by Defendant. Second, under Fed. R. Civ. P. 54(d)(1) Plaintiff had the right to request by motion that this Court review the costs taxed against her within seven days of the taxation of those costs. Plaintiff completely

---

[3] Although the Fifth Circuit awarded appeal costs to Badgerow, no such costs were actually taxed against WMT because Plaintiff failed to file any bill of costs with the Court of Appeals as required by Fed. R. App. P. 39(d)(1): "A party who wants costs taxed must—within 14 days after entry of judgment—file with the circuit clerk and serve an itemized and verified bill of costs." Even if Plaintiff had filed the required bill of costs with the Fifth Circuit Clerk of Court, any cost award issued by the Court of Appeals would have been entirely separate from the costs awarded by this Court to WMT as the prevailing party.

failed to utilize either procedural vehicle in this Court. Appellate courts have recognized that a party's failure to seek review of the taxation by the district court prevents that party from seeking review of the taxation of costs for the first time on appeal. *Marceaux v. Lafayette City-Par. Consol. Gov't*, 614 F. App'x 705, 710 (5th Cir. 2015) ("The plaintiffs appeal the order taxing costs and assessing attorney's fees, but they failed to oppose the motion in the district court, and a party may not oppose a request for costs and fees for the first time on appeal."). Thus, the Bill of Costs has been a final, unappealable Judgment since August 15, 2019, when Plaintiff's time to seek review of the Bill of Costs expired. Based on this failure alone, no legal basis exists to oppose or withhold payment of the past-due-and-owing costs since there is no procedure or method by which Plaintiff could possibly have such cost award altered or overturned.

Plaintiff's counsel has made numerous illogical and untrue statements to WMT's counsel that the cost award is somehow nullified by the Fifth Circuit's partial reversal, which had nothing to do with the cost assessment, and the appellate court in fact stated as much in its Opinion in noting that Badgerow had failed to even address the costs issue in her briefing.[4] *Badgerow*, 974 F.3d at 616 n.5. As there is no legitimate argument for Plaintiff to continue delaying payment of costs that are due by law, this Court should grant this Motion to Enforce and require Plaintiff to pay all costs expended by WMT in filing this Motion, plus judicial interest as discussed herein.

---

[4] To the extent there is a need for any further discussion on this point, Badgerow's failure to brief the costs issue on appeal clearly constituted an abandonment of that issue. *See, e.g., Bernegger v. Dep't of Revenue*, 785 F. App'x 209, 211 (5th Cir. 2019) ("Bernegger also mentions, in passing, that the district court should have allowed him to amend his complaint to allege that CPI had been issued a use-tax exemption certificate. Bernegger does not cite any authority to support his argument. Therefore, this argument is abandoned."); *In re Deepwater Horizon*, 819 F.3d 190, 194 (5th Cir. 2016) ("We thus do not consider whether the district court should have extended the time for Mason to opt out, as we find any argument on this issue abandoned through inadequate briefing."); *United States v. Ballard*, 779 F.2d 287, 295 (5th Cir. 1986) ("Because Ballard has offered only a bare listing of alleged grounds for a new trial, without citing supporting authorities or references to the record, these claims are considered abandoned on appeal. **Notice pleading does not suffice for appellate briefs.**") (emphasis added).

**B. Defendant is the Prevailing Party for Cost Purposes Regardless of the Partial Reversal by the Fifth Circuit.**

Rule 54 mandates the award of costs to the prevailing party. At the time of the taxation of costs, WMT was the prevailing party because this Court granted its Motion for Summary Judgment in full, dismissing all of Plaintiff's claims with prejudice. (R. Doc. 159, 160). The Fifth Circuit's subsequent reversal on a single claim does not merit a change in Defendant's status as the prevailing party, as the Fifth Circuit has consistently held that a party need not prevail on all of the issues to justify an award of costs. For example, in *Studiengesellschaft Kohle mbH v. Eastman Kodak Co.*, 713 F.2d 128, 131 (5th Cir. 1983), the Fifth Circuit held that the determination of whether a party is the prevailing party "requires that the extent of a litigant's success be viewed in light of the entire litigation" and that there is no "numerical formula" used by courts to apportion costs in relation to the extent of the litigant's success on all claims. *Id.* at 131-32. In that case, the Fifth Circuit ultimately held that the Defendant was the prevailing party, even though it did not defeat all of plaintiff's claims. *Id.* More recently, the Fifth Circuit made a similar determination in *Miraglia v. Board of Supervisors of Louisiana State Museum,* 901 F.3d 565, 570 (5th Cir. 2018), holding that the plaintiff "failed to prove a necessary element for monetary damages, so we reverse and render judgment on that claim in favor of the Museum" but went on to state that "[h]e is still a prevailing party, however, and thus we affirm the district court's grant of attorneys' fees."

Based on this Fifth Circuit precedent, the reversal of a single claim does not alter Defendant's status as the prevailing party. The reversal and remand of one claim is not a basis for Defendant to no longer be considered the prevailing party entitled to its costs awarded pursuant to a final Judgment/Bill of Costs that was unopposed, not the subject of a motion for review, and not briefed to the Fifth Circuit.

Plaintiff has produced no authority, despite requests from the undersigned prior to the filing of this Motion, holding that she may avoid payment of an unopposed and final cost award if the appellate court reverses one of the district court's findings resulting in the remand of a single claim for further proceedings. Defendant overwhelmingly prevailed on the vast majority of the claims raised by Plaintiff, which is sufficient for it to be the prevailing party, as established by Fifth Circuit jurisprudence. Thus, this Court should enforce its cost award in the full amount against Plaintiff and order that such costs be paid immediately by Plaintiff, along with the judicial interest legally due.

### C. WMT is entitled to post-judgment interest accruing from the date of the final Judgment.

In addition to the $10,210.55 in costs initially taxed against the Plaintiff on August 8, 2019, Defendant is entitled to post-judgment interest beginning from the date this Court issued its Final Judgment against Plaintiff on June 3, 2019, pursuant to 28 U.S.C. § 1961 as a money judgment.[5] Costs awarded to a prevailing party pursuant to a judgment are subject to interest under 28 U.S.C. § 1961. *See Louisiana Power & Light Co. v. Kellstrom*, 50 F.3d 319, 331 (5th Cir. 1995); *Forrest v. Dynamic Sec., Inc.*, No. CIV.A.00-3423, 2002 WL 31256202, at *5 (E.D. La. Oct. 4, 2002). The Fifth Circuit and this Court have repeatedly held that the calculation of post-judgment interest begins from the date of the judgment on the merits. In *Louisiana Power & Light Co. v. Kellstrom*, 50 F.3d 319, 331 (5th Cir. 1995), the Fifth Circuit held that "the district court did not err in awarding post-judgment interest from the date of the judgment on the merits." (reaffirming *Copper Liquor, Inc. v. Adolph Coors Co.*, 701 F.2d 542 (5th Cir.1983), overruled on other grounds by *J.T. Gibbons, Inc. v. Crawford Fitting Co.*, 790 F.2d 1193 (5th Cir. 1986)).

---

[5] The Bill of Costs was incorporated into the June 3, 2019 Final Judgment of this Court. Exhibit A.

The *Kellstrom* Court cited to *Copper Liquor,* stating:

> The relevant judgment for purposes of determining when interest begins to run is the judgment establishing the right to fees or costs, as the case may be. . . . If, as in the usual course, the amount of costs is later determined by the clerk, **interest will nonetheless run from the date of the judgment allowing costs either expressly or by legal implication.**

*Id.* at 331–32. (emphasis added); *see also Hollybrook Cottonseed Processing, LLC, v. Am. Guarantee & Liab. Ins. Co.,* 662 F. App'x 282, 287 (5th Cir. 2016) (granting interest from date of judgment on the merits; *Morris v. Lee*, No. CIV.A. 98-1656, 2003 WL 21146807, at *10 (E.D. La. May 15, 2003) (same); *Forrest v. Dynamic Sec., Inc.*, No. CIV.A.00-3423, 2002 WL 31256202, at *5 (E.D. La. Oct. 4, 2002) (same, citing *Kellstrom*). Based on this consistent jurisprudence, this Court should order and calculate interest from June 3, 2019, the date of the Final Judgment on the merits, which gave Defendant the legal right to costs pursuant to Rule 54(d). Such interest should be fixed from June 3, 2019 to run through the date of submission of this Motion, which is January 20, 2021, or the date of this Court's Order enforcing its cost award, at this Court's discretion.[6]

### D. Plaintiff's deceptive tactics and blatant disregard for this Court's Judgment merit sanctions.

Pursuant to 18 U.S.C. § 401: "A court of the United States shall have power to punish by fine or imprisonment, or both, at its discretion, such contempt of its authority, and none other, as . . . (3) Disobedience or resistance to its lawful writ, process, order, rule, decree, or command." Furthermore, federal courts have inherent power to impose sanctions for abuse of the judicial

---

[6] WMT leaves it to this Court to determine the amount of interest due as it is uncertain what date the Court will select to run the interest through and what rate it will utilize. However, WMT notes that under 28 U.S.C. § 1961(a), interest on a money judgment in a civil case "shall be calculated from the date of the entry of the judgment, at a rate equal to the weekly average 1-year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System, for the calendar week preceding the date of the judgment."

process. *Chambers v. NASCO, Inc.*, 501 U.S. 32, 43–44 (1991); *Howard v. St. Germain*, 599 F.3d 455, 458 (5th Cir. 2010). Here, an award of sanctions is appropriate.[7]

The history of communications summarized above and set out in the attached letters and emails clearly demonstrate that Plaintiff and her counsel have been playing games and purposefully resisting the payment of the costs awarded by this Court without justification. Each time Plaintiff was asked to provide a legal basis for non-payment, she came up with a new illogical and frivolous explanation. However, her real motivation was laid bare in the December 17th phone conversation when Plaintiff's counsel let slip that she simply does not want to pay the costs and will not pay unless the Court requires her to do so. So now WMT is requesting that the Court require payment of the costs awarded plus interest.

There is no reason why Plaintiff's counsel could not simply have wired the funds or issued a check to WMT's counsel's firm as requested, as parties frequently do during litigation including the settlement of claims. In fact, this is exactly what Plaintiff's counsel agreed to do when she asked the undersigned to provide her with the wire payment information, leading the undersigned to believe the funds would be wired to their firm trust account. Moreover, she stated in a later email that she could wire the proceeds to the individuals but then immediately retracted that mode of payment and insisted that a paper check to REJ Properties, Inc. was the only available method of payment under the law, without citing any legal authority for that contention. Plaintiff's counsel's most recent insistence that she can only issue a check to REJ Properties, Inc. is clearly part of the plan to further delay payment of the cost award. Plaintiff's counsel's statements and positions regarding the cost award are a blatant disregard of this

---

[7] The undersigned notes that this is not the first occasion during the course of this litigation and a related state court action when Plaintiff and her counsel have forced the undersigned into a position where attorney's fees are sought as a measure of last resort. Previously such motions have been filed after failed attempts to negotiate in good faith on issues related to frivolous motion practice, clear violations of procedural and evidentiary rules, and vexatious tactics related to pursuing already dismissed claims.

312227.1

Court's final Judgment and the certified Bill of Costs. Defendant must now request that this Court step in and require Plaintiff to pay the costs taxed against her on August 8, 2019, as well as all interest, attorney's fees, costs, and any other remedy allowed under the law as sanctions for Plaintiff's flouting of this Court's authority.

Plaintiff and her counsel have promised to pay the costs due on at least five occasions: (1) during the status conference with this Court on December 3, 2020 when Plaintiff counsel stated that they were willing to pay the cost award; (2) when Plaintiff counsel emailed on December 9, 2020 that "We will just pay it, and get it back when we win. Please forward wire instructions for payment." ; (3) when Plaintiff counsel said "ok – no problem, just let me know" whether payment should be made by wire to the undersigned's trust account or by a check; (4) when Plaintiff's counsel emailed on December 15, 2020 that they could wire the proceeds to the individuals and were awaiting funding; and (5) when Plaintiff counsel stated that a paper check was required and all she needed was a W-9 form or EIN number to cut a check.  There is no doubt that the award was final and due and should have been paid after the Fifth Circuit issued its mandate and that this disingenuous,  diversionary and dilatory behavior warrants sanctions as it has caused WMT to incur additional time, attorney's fees and costs to move to have this Court order paid what should have been paid once the costs were assessed and not objected to by Plaintiff at the district court level before Plaintiff even filed her Notice of Appeal. Further, these antics by Plaintiff and her counsel have resulted in a waste of this Court's time, energy, and judicial resources. This Court should not have to tell a party to pay an unopposed cost award that formed part of its final Judgment.

Although it is within this Court's discretion to determine and award sanctions for this deliberate, defiant behavior, WMT suggests that an appropriate sanction for Plaintiff's and her

counsel's purposeful delay tactics and absolute disregard for the Court's Judgment assessing costs would be an award of WMT's reasonable attorney's fees incurred in pursuing this Motion, including the time spent communicating with Plaintiff's counsel to demand payment of the costs and drafting and filing this Motion, as well as any further briefing and any oral argument or hearing deemed necessary by this Court.

For the foregoing reasons, REJ Properties, Inc. respectfully requests that this Court grant its Motion and issue an Order enforcing its June 3, 2019 Judgment and the certified Bill of Costs in the amount of $10,210.55 plus judicial interest to be determined by the Clerk of Court. WMT also asks that this Court assess as sanctions against Plaintiff and her counsel the attorney's fees and costs incurred by WMT and order any other relief or sanctions this Court deems necessary and appropriate under the circumstances for Plaintiff and her counsel's recalcitrant behavior.

Respectfully submitted:

**BREAZEALE, SACHSE & WILSON, L.L.P.**

By: */s/ Eve B. Masinter*
E. FREDRICK PREIS, JR. (LA BAR #10704)
EVE B. MASINTER (LA BAR #1218), T.A.
MATTHEW M. MCCLUER (LA BAR #33970)
First Bank & Trust Tower, Suite 1500
909 Poydras Street
New Orleans, LA 70112-4004
Telephone: (504) 619-1800
Fax: (504) 617-7928
Email: Fred.Preis@bswllp.com
Email: Eve.Masinter@bswllp.com
Email: Matthew.McCluer@bswllp.com
*Attorneys for REJ Properties, Inc. d/b/a Walters, Meyer, Trosclair & Associates*